# IN THE COURT OF APPEALS OF IOWA

No. 3-1235 / 12-1754
Filed March 12, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NATHANIEL LAMICE YANCEY JR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Christopher L. McDonald (sentencing) and Scott D. Rosenberg (trial), Judges.

        Defendant appeals from the judgment, convictions, and sentence following a jury trial and guilty verdicts.  **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Linda Hines, Assistant Attorney General, John P. Sarcone, County Attorney, and James Ward, Assistant County Attorney, for appellee.

        Considered by Danilson, C.J., and Vaitheswaran and Mullins, JJ. McDonald, J., takes no part.

**DANILSON, C.J.**

Nathaniel Yancey Jr. appeals from the judgment, convictions, and sentence following a jury trial and guilty verdicts. On appeal, Yancey raises several claims. First, he maintains the district court erred by allowing evidence of prior bad acts where the probative value was substantially outweighed by unfair prejudice. Second, he argues the State failed to present sufficient evidence to support each of his convictions. Next, he claims he received ineffective assistance from counsel at trial. In support of this contention, he maintains counsel was ineffective for failing to object to a jury instruction. Finally, he maintains the district court failed to provide adequate reasoning to explain the decision to impose consecutive sentences. Upon our review of the record, we affirm.

## I. Background Facts and Proceedings.

On November 25, 2011, several "Black Friday" shoppers observed an altercation in the parking lot of Valley West Mall in West Des Moines, Iowa. Several people heard gun shots, and some witnessed a gun being fired. When the police arrived at the parking lot, only the witnesses remained.

Among the witnesses who saw the gun being fired was Francesca Bertagonolli. She reported the incident to the West Des Moines Police and identified Yancey as the shooter in a photo array. Some of the witnesses were passengers in a black Buick Escalade that was shot at and hit. One of the passengers, Janee Jones, identified the shooter by race. Another witness provided the police with a license plate number from one of the cars involved in the shooting; the car belonged to Yancey. Finally, the police collected three

nine-millimeter pistol shell casings from the area the witnesses indicated the shooting occurred.

Eight days later, on December 3, 2011, off-duty Des Moines police officers Sone Cam and Pat Hickey were working at Club 101 in Des Moines, Iowa. During his shift, Officer Cam encountered Yancey when he heard someone yell Yancey "had a piece." When Officer Cam tried to stop Yancey, Yancey resisted and ran away. Officer Cam pursued Yancey outside and tried to deploy his taser during the pursuit. Yancey spun around and began firing shots at Officer Cam, who returned fire. Officer Hickey was eventually able to apprehend Yancey while he fled on foot. When Yancey was apprehended, he no longer had a firearm in his possession. Des Moines Police Officer Michael Dixson located a nine-millimeter pistol underneath a truck in the alley through which Yancey ran. He also located three casings from a nine-millimeter pistol.

Victor Murillo, a criminalist from the Iowa Division of Criminal Investigation (DCI), compared the casings and the weapon found at the scene and determined the casings were fired from the gun retrieved by the Des Moines police officers. Murillo also tested the shell casings retrieved from Valley West Mall and determined those were also fired from the gun recovered from the Club 101 shooting.

On December 16, 2011, Yancey was charged with intimidation with a dangerous weapon, in violation of Iowa Code section 708.6 (2011); assault while participating in a felony, in violation of section 708.3; going armed with intent, in violation of section 708.8; possession of a firearm by a felon, in violation of section 724.26; attempt to commit murder, in violation of section 707.11; assault

on a peace officer with a weapon, in violation of sections 708.1 and 708.3A; assault while participating in a felony, in violation of section 708.3; going armed with intent, in violation of section 708.8; possession of a firearm by a felon, in violation of section 724.26; and intimidation with a dangerous weapon, in violation of section 708.6.

On May 9, 2012, Yancey filed a motion to sever trial on separate offenses. A hearing on the motion was held the same day. Yancey indicated that counts one through four arose from the incident at Valley West Mall in West Des Moines on November 25, 2011, while the rest of the counts arose from the incident at Club 101 in Des Moines on December 3, 2011. The State concurred that the charges from the two incidents should be severed. The district court granted Yancey's motion to sever and ordered the charges stemming from the shooting at Club 101 to be tried first.

On May 14, 2012, a jury trial commenced on the charges stemming from the Club 101 shooting. The jury found Yancey guilty of the lesser-included offense of assault with intent to inflict serious injury on the attempted murder charge, as well as assault on a peace officer with a weapon, assault while participating in a felony, going armed with intent, possession of a firearm by a felon, and intimidation with a dangerous weapon.[1]

On July 30, 2012, Yancey filed a motion in limine regarding the trial for the Valley West Mall incident. In his motion, he requested the exclusion of evidence concerning the shooting at Club 101 and the ballistic testing by the DCI, which

---

[1] Yancey also appeals the judgment, convictions, and sentence regarding the incident at Club 101. Those claims are decided in a separate opinion filed today. *See State v. Yancey*, No. 12-1556 (Iowa Ct. App. March 12, 2014).

found that the gun retrieved matched the casings fired at Valley West Mall on November 25, 2011. Yancey argued the admission of such evidence was highly prejudicial and that any probative value was outweighed by unfair prejudice. The district court ruled on the motion the same day and concluded that evidence from the Club 101 shooting was admissible for the limited purpose of establishing possession of the firearm and identity of the shooter. Following a jury trial, Yancey was convicted of each of the four charges. He stipulated he was a habitual offender for the purpose of the sentencing enhancement.

On August 3, 2012, Yancey was sentenced for the charges stemming from the Club 101 incident. He was sentenced to an indeterminate term of imprisonment not to exceed seventy-five years. A sentencing hearing for the charges stemming from the Valley West Mall shooting was held September 17, 2012. On each of the four charges, Yancey was sentenced to serve an indeterminate term not to exceed fifteen years. The court ordered the sentences to be served concurrent to each other, but consecutive to the sentences imposed for the Club 101 charges, for a total term of incarceration not to exceed ninety years. Yancey appeals.

**II. Standard of Review.**

Yancey raises several issues on appeal:

We review rulings on the admission of evidence of prior bad acts for an abuse of discretion. *State v. White*, 668 N.W.2d 850, 853 (Iowa 2003). Even if an abuse of discretion occurred, reversal is not required if the court's erroneous admission of evidence was harmless. *State v. Henderson*, 696 N.W.2d 5, 10 (Iowa 2005).

We review challenges to the sufficiency of evidence for errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). We review the evidence "in the light most favorable to the State, including all reasonable inferences that may be deduced from" it to determine whether the finding of guilt is supported by substantial evidence and should be upheld. *Id.* Evidence is substantial if it would convince a rational fact-finder of the defendant's guilt beyond a reasonable doubt. *Id.*

A defendant may raise an ineffective-assistance claim on direct appeal if he has reasonable grounds to believe the record is adequate for us to address the claim on direct appeal. *State v. Straw*, 709 N.W. 2d 128, 133 (Iowa 2006). If we determine the record is adequate, we may decide the claim. *Id.* We review claims for ineffective assistance of counsel de novo. *Id.*

Our review of the district court's sentencing decision is for correction of errors at law. *State v. Thomas*, 547 N.W.2d 223, 225 (Iowa 1996). The decision to impose a sentence within statutory limits is "cloaked with a strong presumption in its favor." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). The sentence will not be upset on appeal "unless the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure." *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000). An abuse of discretion is found only when the sentencing court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Thomas*, 547 N.W.2d at 225. In criminal cases the court is to "state on the record its reasons for selecting the particular sentence." Iowa R. Crim. P. 2.23(3)(d). We review both the court's stated reasons made at the sentencing hearing and its written sentencing order.

*See State v. Lumadue*, 622 N.W.2d 302, 304 (Iowa 2001). The statement of reasons can be "terse and succinct," as long as its brevity does not hinder review of the district court's discretion. *State v. Victor*, 310 N.W.2d 201, 205 (Iowa 1981).

## III. Discussion.

### A. Admission of Bad Acts Evidence.

Yancey appeals the district court's decision allowing the State to present evidence regarding the Club 101 shooting at Yancey's trial for the Valley West shooting. Yancey concedes the evidence is relevant but maintains its probative value was substantially outweighed by the danger of unfair prejudice. He argues that because it was unfairly prejudicial, it should have been excluded from trial. *See State v. Mitchell*, 633 N.W.2d 295, 298–99 (Iowa 2001) ("If [the evidence's] probative value is substantially outweighed by the danger of unfair prejudice to the defendant . . . the evidence must be excluded."); *see also* Iowa R. Evid. 5.403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

Unfair evidence is that which:

> appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action may cause a jury to base its decision on something other than the established propositions in the case. The appellate court may conclude that "unfair prejudice" occurred because an insufficient effort was made below to avoid the dangers of prejudice, or because the theory on which the evidence was offered was designed to elicit a response from the jurors not justified by the evidence.

*State v. Plaster*, 424 N.W.2d 226, 231–32 (Iowa 1988). In determining whether evidence is unfairly prejudicial, we consider:

> the need for the evidence in light of the issues and the other evidence available to the prosecution, whether there is clear proof the defendant committed the prior bad acts, the strength or weaknesses of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on the improper basis.

*State v. Taylor*, 689 N.W.2d 116, 124 (Iowa 2004).

Here, the evidence concerning the shooting at Club 101 aided in identifying Yancey as the shooter at Valley West Mall. Although Francesca Bertagonolli identified Yancey as the shooter, none of the other witnesses were able to do so. Furthermore, at trial, each witness testified it was still dark at the time of the incident, and each testified they were some distance from the incident when it occurred, even those who had been in the same vehicle as Francesca. Although Yancey's vehicle was identified as one of the vehicles that was at the mall at the time of the altercation, that evidence did not tie Yancey to the shooting or the gun.

The DCI criminalist testified that the gun retrieved from the Club 101 shooting was the same gun used at the Valley West Mall shooting. Officers Cam and Hickey testified that Yancey shot a gun at Club 101 and was taken into custody near the gun identified by the DCI criminalist. Here, there was "clear proof [Yancey] committed the prior bad acts." *See Taylor*, 689 N.W.2d at 124.

At the time of the trial for the charges stemming from the mall incident, Yancey had already been tried and convicted for the Club 101 incident. Furthermore, the trial court mitigated any prejudicial effect of the evidence by at

least twice instructing the jury verbally of the limited purpose for which the testimony was being offered. The jury was also provided a written instruction which stated that the evidence from the Club 101 incident could "only be used to show the identity of the person charged and not for any other purpose." *See State v. Owens*, 635 N.W.2d 478, 483 (Iowa 2001) ("[W]hen a cautionary instruction is given, it is only in extreme cases that the instruction is insufficient to nullify the danger of unfair prejudice.").

Thus, we conclude the trial court did not abuse its discretion by allowing evidence of Yancey's prior bad acts to be admitted at trial.

**B. Sufficiency of Evidence.**

Yancey maintains the State failed to present sufficient evidence to support his conviction for any of the four offenses of which he was convicted. He claims the district court erred by not granting his motion for judgment of acquittal on each of the four offenses because the State did not present evidence that supported the jury's finding he was the person who shot the gun at Valley West Mall.

When reviewing the evidence in the light most beneficial to the State, a jury could reasonably infer Yancey was the person responsible for shooting the gun in the Valley West Mall parking lot. After the incident occurred, an eyewitness provided the police officers with a license plate of a vehicle that people involved in the altercation used to flee. That car was owned by Yancey. Another eyewitness, Francesca Bertagnolli, picked Yancey out of a photograph array at the police station a few days after witnessing the incident. At trial, she also identified Yancey as the man she had seen in the parking lot. Finally, the

State presented evidence that the gun used at the Valley West Mall shooting was in Yancey's possession eight days later.

Although some of the witnesses, even those in the same car as Francesca, testified they were unable to identify the shooter because of the distance or the darkness, "discrepancies in testimony, in and of themselves, do not preclude proof beyond a reasonable doubt." *See State v. Speaks*, 576 N.W.2d 629, 632 (Iowa Ct. App. 1998). Furthermore, a jury is free to believe or disbelieve any testimony it chooses and to give as much weight to the evidence as, in its judgment, such evidence should receive. *Id.*

Based on our review of the evidence in the record, we conclude the district court properly denied Yancey's motion for judgment of acquittal for all four offenses because substantial evidence existed at the time of the close of the State's evidence.

**C. Ineffective Assistance of Counsel.**

One of the charges against Yancey was going armed with intent. Iowa Code section 708.8 defines it as, "A person who goes armed with any dangerous weapon with the intent to use without justification such weapon against the person of another commits a class 'D' felony." At trial, the jury was provided the following instruction, based on the uniform instruction, regarding the charge:

> The State must prove all of the following elements of Going Armed With Intent as charged in Count III:
> 1. On or about the 25th day of November, 2011 the defendant was armed with a handgun.
> 2. The handgun was a dangerous weapon as defined in Instruction No. 23.
> 3. The defendant was armed with the specific intent to use the handgun against another person.

      4. During the commission of this offense, the defendant moved from one location to another.

      5. The defendant specifically intended to shoot at another person.

      If you find the State has proved all of the elements, the defendant is guilty of Going Armed With Intent. If the State has failed to prove any one of the elements, the Defendant is not guilty on Count III.

Yancey maintains that an essential element of going armed with intent is proof of movement, and he claims the jury instruction did not reflect this essential part of the offense. He maintains that counsel's failure to object to the jury instruction amounts to ineffective assistance from counsel at trial and that he was prejudiced by the failure.

To succeed on his claim, Yancey must show by a preponderance of the evidence that (1) his counsel failed to perform an essential duty and (2) prejudice resulted. *See State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011). To prove counsel failed to perform an essential duty, Yancey must show "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). In doing so, he must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See id.* at 689. Prejudice has resulted when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bowman v. State*, 710 N.W.2d 200, 203 (Iowa 2006). We can affirm if either prong is absent and need not engage in both prongs of the analysis if one is lacking. *See Everett v. State*, 789 N.W.2d 151, 159 (Iowa 2010).

In this case, Yancey's trial counsel did not breach an essential duty. Yancey is correct that "going armed" requires proof of movement. *See State v Ray*, 516 N.W.2d 863, 865 (Iowa 1994) ("As for 'going' armed, we believe the term necessarily implicates proof of movement."). Here, the jury instructions included both the requirement that the State prove, "During the commission of this offense, the defendant *moved from one location to another*" and advised the jury that "[i]f the State has failed to prove any one of the elements, the Defendant is not guilty on Count III." (Emphasis added.) Contrary to Yancey's assertion, these instructions do require proof of movement.[2]

Because the uniform instruction provided to the jury does require proof of movement, any objection to it by counsel would have been overruled. Counsel was not ineffective for failing to raise an objection that has no merit. *See State v. Willis*, 696 N.W.2d 20, 24 (Iowa 2005) (holding counsel was not ineffective for failing to raise an issue that has no merit). Since Yancey's trial attorney did not breach any essential duty, we need not address the prejudice element of ineffective assistance. *See Everett,* 789 N.W.2d at 159.

**D. Decision to Impose Consecutive Sentences.**

This is yet another case of a long line of cases raising on appeal the issue of whether an adequate explanation was given for imposing consecutive sentences. Here, Yancey concedes the district court provided adequate reasoning for its decision to impose a term of incarceration but maintains the court did not provided adequate reasoning regarding why consecutive sentences

---

[2] We conclude a reasonable juror would understand that "during the commission of the offense" means while being armed with a handgun.

are warranted in this particular case. The district court imposed concurrent sentences for each of the charges in the present case but ordered the sentence to run consecutively to the sentence from the Club 101 charges. In doing so, the court stated:

> The Court hereby pronounces the following judgment and sentence. And let the record reflect that in pronouncing the judgment and sentence, the Court has considered the presentence investigation report, the defendant's statement in this case, in which he has made none, and other pertinent information, including letters in the file from people advocating on Mr. Yancey's behalf.
>
> The Court has also considered the following factors: The age of Mr. Yancey, his prior record of convictions, his employment circumstances, his family circumstances, his financial circumstances, the nature of the offense committed, the defendant's history of substance abuse, and the defendant's mental health history, and whether—and what would afford the maximum opportunity for rehabilitation and protection of the public.
>
> The Court has further considered all sentencing options available by statute, and the Court concludes the following judgment and sentence provides the maximum opportunity for rehabilitation of the defendant and protection of the community from further offenses by the defendant.
>
> . . . .
>
> The Court has decided that it's going to run the sentences with respect to Counts I through IV concurrently. However, those sentences shall run consecutively to the sentence on Counts V through X that were previously imposed by Judge Rosenberg in this matter.

"If a person is sentenced for two or more separate offenses, the sentencing judge may order the second or further sentence to begin at the expiration of the first or succeeding sentence." Iowa Code § 901.8. A sentencing court must state, on the record, its reason for selecting a particular sentence. *State v. Barnes*, 791 N.W.2d 817, 827 (Iowa 2010) (citing Iowa R. Crim. P. 2.23(3)(d)). The court must also provide reasons for imposing consecutive sentences. *Id.* "A statement may be sufficient, even if terse and

succinct, so long as the brevity of the court's statement does not prevent review of the exercise of the trial court's sentencing discretion." *State v. Hennings*, 791 N.W.2d 828, 838 (Iowa 2010). We may look to the court's overall sentencing rationale to glean the reasoning for imposing consecutive sentences. *See id.* ("[I]t is apparent to us that the district court ordered the defendant to serve his sentences consecutively as part of an overall sentencing plan.").

In *Hennings*, our supreme court stated, "[t]he court spoke at length about the information it considered in making a sentencing determination and specifically what factors influenced its ultimate decision. This is not a situation where the court 'failed to give even a terse explanation of why it imposed consecutive, as opposed to concurrent sentences.'" 791 N.W.2d at 838 (citing *State v. Uthe*, 542 N.W.2d 810, 816 (Iowa 1996)). In *Hennings* not a single word or sentence was directly expressed explaining why consecutive sentences were imposed.

While the court provided no explicit connection between its sentencing plan as a whole and its decision to impose the consecutive sentence, we can discern no difference between these facts and the facts in *Hennings*. We can only conclude the court's reasoning is apparent from the overall sentencing rationale.[3] *See Hennings*, 791 N.W.2d at 838.

Thus, we find the district court did not abuse its discretion, and we affirm.

---

[3] *See State v. Scott*, 12-1531, 2013 WL2146226, at \*2 (Iowa Ct. App. May 15, 2013) (Danilson, J., concurring specially).

**IV. Conclusion.**

Upon our review, we find the evidence of Yancey's prior bad acts was not unfairly prejudicial and the trial court did not abuse its discretion by allowing the evidence to be admitted at trial. We also find the district court properly denied Yancey's motion for judgment of acquittal for all four offenses because substantial evidence existed at the time of the close of the State's evidence. Because Yancey's trial attorney did not breach an essential duty and thus did not provide ineffective assistance, we affirm Yancey's convictions. Finally, the sentencing court did not abuse its discretion when it ordered the sentence on the present case to run consecutively to the sentence imposed on a previous case. We affirm.

**AFFIRMED.**