# IN THE COURT OF APPEALS OF IOWA

No. 15-1276
Filed September 28, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JEREMY GLENN VIRDEN,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

The defendant appeals from his convictions for burglary in the second degree, as an habitual offender, and burglary in the third degree. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

Jeremy Virden appeals from his convictions after pleading guilty to third-degree burglary and being found guilty of second-degree burglary at the conclusion of a jury trial. Virden maintains he received ineffective assistance from trial counsel because counsel failed to object to prosecutorial misconduct and failed to ensure Virden's guilty plea to burglary in the third degree was made voluntarily, intelligently, and with a factual basis. Virden maintains the court abused its discretion when it denied his motion for new trial based on juror bias. He also argues the court applied the wrong standard when ruling on his weight-of-the-evidence challenge. Finally, Virden maintains there was not sufficient evidence to support his conviction for burglary in the second degree.

**I. Background Facts and Proceedings.**

On January 28, 2015, Virden was charged by trial information with burglary in the second degree and burglary in the third degree (motor vehicle).

About a week before trial, Virden filed his notice of intent to plead guilty to burglary in the third degree. He entered a guilty plea the morning before trial began and engaged in a colloquy in open court. He also filed a written guilty plea the next day.

At the jury trial for the charge of burglary in the second degree, Carol Baker testified that on the day in question, she took her friend Mary Scavo out to run errands and get lunch. When they returned to Mary's home, an SUV that neither Mary nor Carol recognized was parked in Mary's driveway. Carol went into the home and could immediately tell it was being burglarized. She saw a white man riffling through Mary's bedroom drawers. After the man noticed Carol,

he ran out of the house with some of Mary's belongings. Carol was close enough to him to try to grab the items from him, but the man was able to get past her to his SUV and leave.

Carol and Mary called the police.

The neighbor who lived across the street had already called the police to report the suspicious SUV. The neighbor provided a description of the car and stated that although he could not see the driver clearly, he could tell the driver was wearing fluorescent-colored gloves. The neighbor saw the man enter Mary's house, and he saw the man leave the home sometime later with Carol chasing him. The neighbor noted the man was still wearing the fluorescent gloves.

Carol and Mary also called Mary's son, Victor, to come comfort Mary, who was visibly shaken. Victor noted the ransacked nature of his mother's home. After officers found Virden in an SUV that matched the description given to them, Victor was asked to identify any of the things in the vehicle belonging to his mother. He was able to do so, noting that one of the things in the vehicle was his mother's identification card with her photo on it.

At a separate time, Carol was taken to see the man and the vehicle in order to see if she could identify them. Carol stated the SUV was the same, and she was ninety percent certain it was the same man.[1]

Following the close of evidence, the jury found Virden guilty of burglary in the second degree. Virden stipulated that he was an habitual offender. At a later date, he was sentenced to a term of incarceration not to exceed seventeen

---

[1] At the time of trial, Mary was ninety-eight years old, and she did not testify.

years—fifteen years for burglary second degree as an habitual offender and two years for burglary third degree.

Virden appeals.

## II. Standards of Review.

We review claims of ineffective assistance de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).

We review a denial of a motion for a new trial based upon juror bias for an abuse of discretion. *State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015).

We review a weight-of-the-evidence challenge for an abuse of discretion by the trial court. *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003). We do not decide anew the underlying question of whether the verdict is against the weight of the evidence. *Id.*

We review a claim regarding the sufficiency of the evidence to support a conviction for correction of errors at law. *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005).

## III. Discussion.

### A. Ineffective Assistance

Virden maintains he received ineffective assistance from trial counsel. Specifically, he maintains trial counsel was ineffective in failing to object to a statement made by the prosecutor during closing argument that was in violation of the court's ruling on the motion in limine in the second-degree-burglary trial and in failing to ensure his guilty plea was voluntary and in accordance with Iowa Rule of Criminal Procedure 2.8(2)(b) in the burglary third degree plea proceedings.

To prevail on a claim of ineffective assistance of counsel, Virden must prove by a preponderance of the evidence (1) his attorney failed to perform an essential duty and (2) prejudice resulted from the failure. *See State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011). We measure counsel's performance against an objective standard of reasonableness under prevailing professional norms. *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012). There is a presumption counsel performed competently. *Id.* Prejudice exists where the defendant proves by a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 496. We look to the cumulative effect of counsel's alleged errors to determine whether Virden satisfied his burden regarding the prejudice prong. *Id.* at 499. Virden's claim fails if either element is lacking. *See Everett v. State*, 789 N.W.2d 151, 159 (Iowa 2010). Although we prefer to preserve ineffective-assistance claims for development of the record, *see State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006), the record here is adequate for us to decide the claims on direct appeal.

***1. Prosecutorial Misconduct.*[2]** Prior to trial, Virden filed a motion in limine, asking the court to instruct the State not to refer to or mention, among

---

[2] In a recent case, the Iowa Supreme Court cautioned against conflating the terms *prosecutorial misconduct*, which generally describes "those statements 'where a prosecutor intentionally violates a clear and unambiguous obligation or standard imposed by law, applicable rule or professional conduct' as well as 'those situations where a prosecutor recklessly disregards a duty to comply with an obligation or standard," and *prosecutorial error*, which includes situations "'where the prosecutor exercises poor judgment' and 'where the attorney has made a mistake' based on 'excusable human error, despite the attorney's use of reasonable care.'" *State v. Schlitter*, 881 N.W.2d 380, 394 (Iowa 2016) (citations omitted). Here, there is no record concerning why the prosecutor made the complained-of remark, and we do not believe we can discern the intent. We use the term prosecutorial misconduct throughout, as

other things, "statements relating to drug use by the Defendant" and "any evidence not produced by the State." The court granted those portions of the motion in limine.

During the State's rebuttal closing statement, the prosecutor said:

> But just because something is obvious doesn't mean the State doesn't have to prove it. I have to prove all five of those elements [of burglary in the second degree]. So I called witnesses to prove that. And nobody who pulls all those drawers out of somebody's dresser and goes through their bathroom cabinet looking for what? Right? Does that make sense too? That he's looking through the medicine cabinet looking for drugs? Then 24 minutes after the burglary, he's asleep. We can fill in the gaps all we want with our imagination. But for deliberations, let's focus on what we know.

Virden maintains the statement about drugs was both in violation of the ruling on the motion in limine and not supported by evidence presented at trial. He maintains the statement amounted to prosecutorial misconduct that prejudiced him, and trial counsel was ineffective for not objecting.

Here, even if the prosecutor's statement amounted to misconduct, "it is not a prosecutor's misconduct which entitles a defendant to a new trial; it is the prejudice which results therefrom and which prevents the trial from being a fair one." *State v. Webb*, 244 N.W.2d 332, 333 (Iowa 1976). The question we must decide is "whether there is a reasonable probability the prosecutor's misconduct prejudiced, inflamed or misled the jurors so as to prompt them to convict the defendant for reasons other than the evidence introduced at trial and the law as

---

both Virden and the State did in their appellate briefs. We note that we are to apply the multi-factor test outlined in *State v. Graves*, 668 N.W.2d 860, 877–78 (Iowa 2003) either way. *See id.* (stating the multifactor test set out to evaluate the statements in determining if there was misconduct and if that was misconduct was prejudicial "easily translate to an evaluation of prosecutorial error").

contained in the court's instructions." *Graves*, 668 N.W.2d at 877. In making our decision, we consider the following factors: (1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the misconduct. *Id.*

Virden cannot establish that he was prejudiced by the prosecutor's lone reference to drugs in the closing argument. *See Webb*, 244 N.W.2d at 333 ("Ordinarily a finding of prejudice results from [p]ersistent efforts to inject prejudicial matter before the jury. Of course, prejudice may result from isolated prosecutorial misconduct, but we find it did not do so here."). The comment was made in isolation, followed by the prosecutor's instruction to the jury to focus on what they know, rather than fill in gaps with their imagination. Additionally, Victor Scavo testified that the most thorough searching or ransacking "was in the bathroom" where "all the drawers were out." The prosecutor was offering an explanation for why someone would have ransacked the bathroom during a burglary, albeit in violation of the motion in limine ruling. *See State v. Thornton*, 498 N.W.2d 670, 676 (Iowa 1996) ("In closing arguments, counsel is allowed some latitude. Counsel may draw conclusions and argue permissible inferences which reasonably flow from the evidence presented." (citation omitted)). The evidence against Virden was strong. The neighbor had reported the suspicious SUV to officers, noting the man driving was wearing fluorescent gloves. Additionally, Carol saw the man in the home searching through drawers and also described the vehicle to officers. When Virden was found within a few blocks of

the home less than an hour after the burglary took place, he was in a vehicle that matched the description. Once officers were able to see in the vehicle, they noted the presence of both the fluorescent gloves and items—including an identification card with photo—that belonged to Mary Scavo. Although Virden's strategy appeared to be to dispute that he was the person who committed the burglary, no witness saw a second party in the vehicle or the home, and Virden was alone in the vehicle was the officers found him. Because the evidence of Virden's guilt was strong, we believe it is unlikely the jury looked beyond the evidence properly before it when it convicted him of burglary in the second degree. *See State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006) ("Clearly, the stronger the case against the defendant, the less likely the jury is to look beyond the record.").

**2. *Voluntariness of Plea.*** Virden also maintains trial counsel was ineffective for failing to ensure his guilty plea to burglary in the third degree was voluntary and in accordance with Iowa Rule of Criminal Procedure 2.8(2)(b). We find no merit in Virden's claim.

Before trial began on April 20, 2015, the court asked Virden if he still intended to plead guilty to the third-degree burglary charge. He responded he did, and the following exchange took place between Virden and his attorney in open court:

> Q: All right. So, Jeremy, tell us what happened in the Hy-Vee parking lot on the morning of September 18, 2014. A: I broke into a vehicle and stole some property out of it.
> Q: Did you have any right to do so? A: No, I did not.
> Q: Did you do so with the specific intent to remove property from that vehicle? A:Yes.

Q: Okay. You're aware that the crime is an aggravated misdemeanor? A: Yes.

Q: And you're aware that is punishable by a maximum of two years in prison? A: Yes, I am.

. . . .

Q: Okay. Do you know the rights that you are giving up by entering a plea to that charge? Essentially, it would be your trial rights. Are you aware of those? A: Yes, I'm aware.

Q: Okay. I might ask you just a few of those. Are you right now under sound mind and you're not under the influence of any drug, medicine, or alcohol that would alter your ability to make decisions? A: No, I'm not.

Q: Okay. And you previously said that you do understand the nature of that charge against you; is that correct? A: Yes.

Q: Okay. And do you understand that you're considered innocent until the State proves your guilt with evidence beyond a reasonable doubt? A: Yes.

Q: Do you know that you have the right to a speedy and public trial by a jury and a right to be represented by an attorney at that trial? A: Yes.

Q: You do know that if you cannot afford one, the Court will appoint one for at the State['s] expense; is that right? A: Yes.

Q: You know you have the right to hear all the evidence against you from witnesses and subject them to cross-examination. Do you understand that? A: Yes.

Q: Do you know that you also have the right to testify in your defense or refuse to testify. If you refuse to testify, any refusal will not reflect on your guilty or innocence. Do you understand that? A: Yes, I do.

Q: Okay. You also have the right to produce witnesses, subpoena them to appear at trial, and have them testify on your behalf. Do you understand that? A: Yes.

Q: Okay. And by pleading guilty, you're giving up all those rights, and you know that the judge could sentence you to the maximum provided by law? A: Yes.

Q: And are you pleading guilty to that charge because you are guilty; is that correct? A: That's correct.

Q: And you would like the Court to accept that guilty plea; is that correct? A: I would.

DEFENSE ATTORNEY: All right.

THE COURT: All right.

THE COURT: Mr. Virden, your attorney went through the colloquy with you. I just want to make sure that you're doing so voluntarily and of your own free will; is that correct? A: Correct.

THE COURT: Anybody make any promises to you with regard to that plea as to what punishment you might receive? A: No.

> THE COURT: Are you pleading guilty to that charge because you're in fact guilty of that charge? A: That's correct.
> THE COURT: All right.

The court then asked defense counsel if Virden would also be filing a written guilty plea, and defense counsel stated he would.

The next day, Virden filed the written guilty plea. The written plea included the maximum punishment for burglary in the third degree and listed the trial rights Virden was waiving by pleading guilty. Virden handwrote a factual basis for the plea and signed the document.

Based on the record before us, Virden has not established that trial counsel failed to ensure his guilty plea conformed to the requirements of rule 2.8(2)(b). As such, Virden has not established that trial counsel breached an essential duty, and his claim of ineffective assistance fails.

**B. Juror Bias.**

Virden maintains the district court abused its discretion when it denied his motion for a new trial in the burglary second degree trial based on a theory of juror bias.

Following the close of the State's evidence, one of the jurors alerted the court that he knew one of the State's witnesses. The juror was brought into the courtroom with both attorneys and Virden present and asked what he wanted to tell the court. The juror stated:

> I—ever since the pretrial selection, I've heard the name Scavo, and I couldn't associate it with anything, but it was familiar in a way, no more than like Johnson, I guess, but Scavo is definitely a unique name. And it wasn't until today when I saw Victor Scavo that it all—it kind of—I knew this guy. And I didn't know how I knew it, so I went to lunch, thought about it, and remembered we used— my family used to have a market in Winterset where we created a

bunch of produce, and we would regularly sell to Victor Scavo for his store. And so I guess it was always professional. I never knew him personally, but I didn't want to just hold this information. I felt it should be addressed.

The prosecutor then asked the juror if there was any reason he could not be fair to both sides, and the juror stated, "I don't believe so." In response to a question from the defense attorney, the juror stated he had not seen Victor in approximately five years, since they stopped doing business. The defense attorney also asked the juror if he had a positive opinion of Victor, and the juror stated, "I mean, he not—he never wronged us in any way. I mean, he was a good customer." The juror stated he never met Mary Scavo and he had not told any of the other jurors that he knew Victor. Finally, the court asked if he could weigh the evidence impartially for both the State and the defendant, and the juror answered, "Yes." The defense attorney asked the court to excuse the juror and have the alternate sit in the juror's place because of the "long-term relationship" the juror had with Victor. The court denied the request.

After Virden was convicted, he filed a pro se motion for new trial; one of his bases for the new trial was juror bias. The court denied the motion, citing the recent supreme court case *State v. Webster*, 865 N.W.2d 223, 239 (Iowa 2015).

"Juror bias may be actual or implied." *Webster*, 865 N.W.2d at 236. "Actual bias occurs when the evidence shows that a juror, in fact, is unable to lay aside prejudices and judge a case fairly on the merits." *Id.* "Implied bias arises when the relationship of a prospective juror to a case is so troublesome that the law presumes a juror would not be impartial." *Id.* "Implied bias has been found

to arise, for instance, when a juror is employed by a party or is closely related to a party or witness." *Id.*

Here, there was no evidence the juror was actually biased. When asked directly, the juror denied there was anything preventing him from being fair to both sides. Additionally, the juror stated he could impartially weigh the evidence he heard. Without other evidence of bias, the business relationship the juror had with the State's witness five years prior is not enough to disqualify the juror. *See id.* at 238–39 ("The mere fact a juror has knowledge of parties or witnesses does not indicate actual bias or require juror disqualification."); *see also Webster*, 865 N.W.2d at 235 (finding no actual bias where juror's daughter "liked" the victim's stepmother's post on social media during the murder trial). "For the purpose of determining juror prejudice, the relevant question is not what a juror has been exposed to, but whether the juror holds such a fixed opinion of the merits of the case that he or she cannot judge impartially the guilty or innocence of the defendant." *State v. Gavin*, 360 N.W.2d 817, 819 (Iowa 1985). After reviewing the record, we cannot say the district court abused its discretion in finding that no such fixed opinion was held by the juror in question and denying Virden's motion for new trial accordingly.

**C. Weight of the Evidence.**

Virden maintains the district court applied the wrong standard in ruling on his weight-of-the-evidence challenge in his motion for new trial. He maintains the court considered the sufficiency of the evidence instead, and he asks that we remand so the district court can apply the correct standard. *See State v. Ellis,*

578 N.W.2d 655, 659 (Iowa 1998) ("'[C[ontrary to . . . the evidence' in rule 23(2)(b)(6) means 'contrary to the weight of the evidence'").

Although the court used the word "sufficient" in ruling on the challenge, we believe a closer reading of the court's ruling (both as stated from the bench and the written ruling filed later) establishes that the court considered the credibility and weight of the evidence. The court described Carol and Victor's testimony that Mary had not given Virden permission to be in the home as "credible." Additionally, the court noted that the evidence at trial was "overwhelmingly" against the defendant. The court did not mention that it was considering the evidence in the light most favorable to the State, which would indicate it was engaged in considering the sufficiency of the evidence. In considering a similar challenge on appeal, our court found that the district court applied the correct standard. *See State v. O'Shea*, 634 N.W.2d 150, 155 (Iowa Ct. App. 2001) ("While 'substantial evidence' is one element of the sufficiency of the evidence standard, other indices of that standard—such as viewing evidence in the light most favorable to the prosecution—are wholly lacking from the court's decision. Moreover, the district court made specific credibility findings—a thing not permitted under a sufficiency of the evidence assessment—and the bulk of its ruling is a near verbatim recitation of the *Ellis* criterion.") Also, we note that in its written ruling on the motion, the court cited *Ellis* and referenced its "wide discretion" in deciding the motion.

Although the court used the word "sufficient," we believe the court applied the correct standard to Virden's weight-of-the-evidence challenge. Moreover,

having reviewed the record, the district court did not abuse its discretion in doing so.

### D. Substantial Evidence.

Virden challenges the sufficiency of the evidence to support his conviction for burglary in the second degree. Specifically, he maintains there was not sufficient evidence to support that he was the person who committed the burglary. In considering the sufficiency of the evidence, we review the evidence in the light most favorable to the State. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). In doing so, we make all reasonable inferences that may be fairly drawn from the evidence. *Id.*

Substantial evidence supports the jury's finding that it was Virden who committed the robbery. When the neighbor called police to report the suspicious vehicle, he described the vehicle and stated that the driver was wearing fluorescent gloves. Carol walked into the home while the robbery was taking place, and she was close enough to the burglar to try to grab the stolen items from him. Her description of the vehicle matched the neighbor's description. When police found that vehicle nearby a short time later—less than one hour— Virden was the only person in the vehicle, and he appeared to be sleeping. Carol identified the vehicle as matching the one she saw, and she identified Virden as the burglar—albeit with "ninety percent certainty." Officers found items belonging to Mary in the vehicle and the fluorescent gloves. Although Virden implies that someone else may have burglarized the home and then left him in the vehicle with the stolen items, none of the witnesses saw a second person, either in the vehicle when it was driving around the neighborhood or in Mary's

home. Additionally, Virden notes that none of his fingerprints were found in the home, but the neighbor testified that when the burglar exited the home, the neighbor could see that he was still wearing the fluorescent gloves.

Considering the evidence in the light most favorable to the State, there is sufficient evidence to support the jury's determination that it was Virden who burglarized the home.

**IV. Conclusion.**

Having considered each of Virden's claims and finding no error, we affirm.

**AFFIRMED.**