# IN THE COURT OF APPEALS OF IOWA

No. 17-1522
Filed June 6, 2018

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**JEREMY SHAQUAN DUKES,**
     Defendant-Appellant.
_____


     Appeal from the Iowa District Court for Dubuque County, Thomas A. Bitter,

Judge.


     Defendant appeals his conviction for conspiracy to commit a forcible felony

(second-degree robbery).  **AFFIRMED.**


     Andrew J. Dunn of Parrish Kruidenier Dunn Boles Gribble Gentry Brown &

Bergmann, L.L.P., Des Moines, for appellant.

     Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


     Considered by Vogel, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

Jeremy Dukes appeals his conviction for conspiracy to commit a forcible felony (second-degree robbery). We find there is substantial evidence in the record to show Dukes entered into an agreement with others to commit second-degree robbery and he had the specific intent to promote or facilitate the commission of second-degree robbery. We also find Dukes has not shown he received ineffective assistance because defense counsel failed to challenge the evidence as to whether all of the other co-conspirators were proven not to be law enforcement agents. We preserve for possible postconviction proceedings the issue of whether defense counsel should have given an opening statement. We affirm Dukes's conviction.

## I.    Background Facts & Proceedings

On April 1, 2016, Dukes and his girlfriend, Adrianna Chica, were staying at an apartment at 1506 Iowa Street in Dubuque with Eric Campbell and Savanna Stotlar. Campbell stated he had recently been robbed and needed "a quick come up," meaning a quick way to get money. He stated he wanted "[t]o catch a lick, to catch a stain," which meant to commit a robbery. Dukes stated he would be on the lookout for an opportunity.

Campbell, Dukes, Tacari Minifee, and some other men went into the bedroom of the apartment. As Dukes walked out of the room, Stotlar overheard him say "he can run them out there to do it, but he had to make some errands." When Dukes and Chica returned to the apartment after their errands, they picked up Campbell and Corby Yager, who directed them to the Table Mound Trailer Park. Dukes remarked he knew someone who lived there, Collin Brown. Yager stated

Brown was the intended target of the robbery. Chica testified Dukes stated, "[W]e didn't want to be part of it because we knew him." However, Chica showed Campbell and Yager where Brown lived.[1] The group then returned to the apartment.

Dukes and Chica left again later in the evening to go to Wal-Mart, telling Campbell they would be back by around 12:15 a.m. Chica testified, "we both felt pretty bad, but we knew we couldn't do anything to stop them, and so he was like, 'I just got to get back and they just got to plan it right.'" Dukes told Chica he wanted to get back to the apartment to "make sure that they didn't rush it or that they planned it" because he did not want Brown to be harmed. Chica stated she and Dukes were supposed to be the drivers for the robbery.

Back at the apartment, Campbell, Minifee, and Imere Hall were becoming agitated waiting for Dukes to get back. Hall stated he could contact someone for a ride and they were picked up. Dukes was very upset when he arrived a short time later and found the other men had already left. He said, "Dang-it, they were supposed to wait." Dukes called Minifee and stated, "[W]hen I find another driver, I'll send them out." Stotlar heard this conversation and said she could drive out but did not know where she was going, so she asked to have Chica accompany her. Dukes asked Chica "if [she] was okay with it," and she agreed to go with Stotlar, who drove Chica's car.

Stotlar and Chica met the other vehicle, driven by Taylor Shaw, at a McDonalds. Campbell could not remember which trailer belonged to Brown and

---

[1] The evidence is ambiguous as to whether Chica alone showed Campbell and Yager where Brown lived or whether she and Dukes pointed out Brown's trailer.

needed Chica to point it out to him again. Stotlar and Chica drove through the trailer park, flashing their lights by Brown's trailer, then returned to the apartment. Campbell, Minifee, and Hall broke into Brown's trailer. They obtained eighty dollars and shot Brown, who died as a result of his injuries. Brown's girlfriend, Alecea Lombardi, who was present during the armed robbery, called 911. Surveillance video showed Chica's vehicle and the vehicle driven by Shaw in the trailer park prior to the incident. Officers apprehended Dukes and Chica on the morning of April 2 at the apartment.

Dukes was charged with conspiracy to commit a forcible felony, in violation of Iowa Code section 706.3(1) (2016), a class "C" felony, with the forcible felony specified as second-degree robbery. Chica and Stotlar testified in Dukes's trial.[2] The jury found Dukes guilty of conspiracy to commit robbery in the second degree. The district court denied Dukes's motion for new trial and motion in arrest of judgment. Dukes was sentenced to a term of imprisonment not to exceed ten years. He appeals his conviction.

## II. Sufficiency of the Evidence

On claims concerning the sufficiency of the evidence, our review is for the correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). In reviewing a challenge to the sufficiency of evidence supporting a guilty verdict, we consider all of the evidence in the record "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the

---

[2] Both Chica and Stotlar agreed to testify truthfully in trials of other codefendants as part of their respective plea agreements. Neither of them had entered guilty pleas prior to Dukes's trial, as their agreements were contingent upon their truthful testimony.

evidence." *State v. Keopasaeuth,* 645 N.W.2d 637, 640 (Iowa 2002). A verdict will be upheld if there is substantial evidence in the record to support it. *Sanford*, 814 N.W.2d at 615. We will consider all the evidence presented, not just the evidence supporting the verdict. *State v. Jacobs*, 607 N.W.2d 679, 682 (Iowa 2000). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Sanford*, 814 N.W.2d at 615. "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006).

The offense of conspiracy is defined in section 706.1, as follows:

1. A person commits conspiracy with another if, with the intent to promote or facilitate the commission of a crime which is an aggravated misdemeanor or felony, the person does either of the following:
a. Agrees with another that they or one or more of them will engage in conduct constituting the crime or an attempt or solicitation to commit the crime.
b. Agrees to aid another in the planning or commission of the crime or of an attempt or solicitation to commit the crime.
2. It is not necessary for the conspirator to know the identity of each and every conspirator.
3. A person shall not be convicted of conspiracy unless it is alleged and proven that at least one conspirator committed an overt act evidencing a design to accomplish the purpose of the conspiracy by criminal means.
4. A person shall not be convicted of conspiracy if the only other person or persons involved in the conspiracy were acting at the behest of or as agents of a law enforcement agency in an investigation of the criminal activity alleged at the time of the formation of the conspiracy.

**A.** Dukes claims the State did not present sufficient evidence to show he entered into an agreement with others to commit robbery at Brown's trailer. "A

conspiracy is a combination or agreement between two or more persons to do or accomplish a criminal or unlawful act, or to do a lawful act in an unlawful manner." *State v. Ross*, 573 N.W.2d 906, 914 (Iowa 1998). "The conspiracy does not depend on the fulfillment of the agreement, only that there is an agreement." *Id.* The requisite agreement may be established by either direct or circumstantial evidence. *Id.*

Dukes points to Chica's testimony that when he found out the proposed victim was Brown, Dukes "told them that we didn't want to be a part of it because we knew him." Other evidence, however, shows Dukes changed his mind and agreed to help plan the robbery. Chica testified to a later conversation, when she and Dukes were driving to Wal-Mart, stating, "we both felt pretty bad, but we knew we couldn't do anything to stop them, and so he was like, 'I just got to get back and they just got to plan it right.'" Also, while Dukes and Chica were at Wal-Mart Dukes told Chica "he wanted to get back because he had told [Campbell] that he would be back by a certain time and that he—that they made sure that they didn't rush it or that they planned it." The prosecutor clarified, "So this was all after Mr. Dukes knew the intended target was Collin Brown?" and Chica stated, "Yes."

Additionally, while fully aware Campbell, Minifee, and Hall intended to commit robbery at Brown's trailer, Dukes discussed the matter with them over the telephone. Stotlar overheard Dukes tell Minifee "he need[ed] to find another driver; 'when I find another driver, I'll send them out.'" Stotlar and Chica then drove out to meet Campbell, Minifee, and Hall in order to show them where Brown lived.

We find there is substantial evidence in the record to show Dukes entered into an agreement with others to commit second-degree robbery.

**B.** Dukes also claims the State did not present sufficient evidence to show, even if he entered into an agreement, he did so with the specific intent to promote or facilitate the robbery at Brown's trailer. *See* Iowa Code § 706.1(1). In order to enter into a conspiracy, a defendant must have the intent to promote or facilitate a criminal act. *State v. Speicher*, 625 N.W.2d 738, 741 (Iowa 2001).

From discussions with Campbell, Dukes was aware Campbell wanted to commit robbery and the intended victim was Brown. Dukes told Chica he wanted to be involved in planning the robbery because he wanted to prevent Brown from being harmed. Chica testified:

> Q. Because I think you said earlier he didn't want Collin Brown to get harmed? A. Yes.
> Q. To your knowledge, was the Defendant, when he was talking about this, okay with Collin Brown being robbed? A. Yes.
> Q. Because he could come back from being robbed? A. Yes.
> Q. What does that mean, come back from being robbed? A. He could start over again. You can always get more money, more drugs, whatever you want, but you can't come back from that.
> Q. And this planning was with Mr. Campbell, Eric Campbell? A. I would suppose so.

We find there is substantial evidence in the record to show Dukes entered into an agreement with Campbell and others with the intent to promote or facilitate the commission of second-degree robbery.

### III.    Ineffective Assistance

We conduct a de novo review of claims of ineffective assistance of counsel. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). To establish a claim of ineffective assistance of counsel, a defendant must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted to the extent it denied the defendant a fair trial. *Id.* A defendant's failure to prove either element by a

preponderance of the evidence is fatal to a claim of ineffective assistance. *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

**A.** Dukes claims defense counsel should have challenged his conviction on the ground the State did not adequately show the other conspirators were not law enforcement agents. Dukes claims the State must make an affirmative showing none of the members of the conspiracy were law enforcement agents. During the trial, Deputy Jill Bellmann of the Dubuque County Sheriff's Office testified Campbell and Minifee were not acting as law enforcement agents or acting on the request of law enforcement agents. No evidence was presented as to any other potential members of the conspiracy.

Section 706.1(4) provides, "A person shall not be convicted of conspiracy if the only other person or persons involved in the conspiracy were acting at the behest of or as agents of a law enforcement agency in an investigation of the criminal activity alleged at the time of the formation of the conspiracy." It is the State's burden to prove this element of the offense. *State v. Kern*, 831 N.W.2d 149, 158 (Iowa 2013).

The State argues the exception in section 706.1(4) applies only if every other person in the conspiracy is a law enforcement agent or acting on the behest of agents, so the State was only required to prove some of the other members of the conspiracy were not law enforcement agents or acting on the behalf of agents. We agree with the State's reading of the statute. Section 706.1(4) applies "if the only other person or persons involved in the conspiracy" were law enforcement agents. The facts in this case show at least some of the other persons in the conspiracy were not law enforcement agents. Therefore, the exception found in

section 706.1(4) does not apply. Defense counsel has no obligation to raise a meritless argument. *See State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015).

**B.** Dukes raises his claims regarding section 706.1(4) in relation to the jury instructions, stating defense counsel should have objected to the instructions because they failed to provide the State was required to show all the other conspirators were not law enforcement agents. He also claims the instructions should have named each alleged co-conspirator. Dukes's arguments are contrary to section 706.1(2), which provides, "It is not necessary for the conspirator to know the identity of each and every conspirator." We find Dukes has not shown he received ineffective assistance on this issue.

**C.** Dukes claims he received ineffective assistance because defense counsel did not give an opening statement. He states the facts in this case were somewhat complex and it would have been helpful to the jurors for defense counsel to give an opening statement in order to alert the jurors to the defense's theory of the case.

After the State's opening argument, defense counsel stated, "Your Honor, the Defendant is going to reserve our right to give an opening statement." When the State rested its case, defense counsel did not give an opening statement and informed the court the defense did not intend to present any witnesses. We generally preserve issues for postconviction relief "where the challenged actions of counsel implicate trial tactics or strategy which might be explained in a record fully developed to address those issues." *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012) (citation omitted). We conclude this issue implicates trial tactics or strategy and should be preserved for a possible action for postconviction relief.

We affirm Dukes's conviction for conspiracy to commit a forcible felony (second-degree robbery).

**AFFIRMED.**