# IN THE SUPREME COURT OF IOWA

No. 11–0156

Filed June 22, 2012

**STATE OF IOWA,**

Appellee,

vs.

**DONTAY DAKWON SANFORD,**

Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris (motion to dismiss) and Stephen C. Clarke (trial), Judges.

Defendant appeals his conviction for first-degree burglary. Defendant claims there was insufficient evidence that the victim's automobile was an "occupied structure" under Iowa Code section 702.12 (2009). **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and David A. Adams, Assistant Appellate Defender, for appellant, and Dontay Sanford, Fort Dodge, pro se.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Brian J. Williams, Assistant County Attorney, for appellee.

**ZAGER, Justice**.

This case requires us to determine whether the State produced sufficient evidence to establish that the victim's automobile constituted an occupied structure as that term is defined in Iowa Code section 702.12 (2009). We conclude that the State produced sufficient evidence to support a finding that the victim's car was an occupied structure. We therefore affirm the district court.

## I. Background Facts and Proceedings.

At approximately 2:00 a.m. on December 11, 2008, Jasmine Mills, Daniel Harrington, and Marqualis Montgomery pulled into a Kum & Go convenience store in Waterloo and parked in front of the building. Mills and Montgomery exited Mills' Dodge Stratus and entered the store while Harrington remained in the front passenger seat. Almost immediately thereafter, Dontay Dakwon Sanford arrived at the same Kum & Go. Sanford was driving a white Jeep, and Shean Holmes, Javon Collins, Mandy Loge, and Cecillie Miles were passengers in the vehicle. Sanford parked at the gas pumps. A third car pulled up at the gas pumps next to the Jeep and directly behind Mills' vehicle. Anthony Jackson exited the third vehicle, and Sanford and Holmes exited the Jeep, and the three of them walked past Mills' Stratus and towards the store entrance.

As Sanford and Holmes walked past Mills' vehicle, they began to exchange words with Harrington, who then got out of Mills' Stratus. Mills then exited the store and walked to her vehicle, opened the driver's side door, and popped the trunk. Harrington then went to the trunk of Mills' Stratus in an attempt to make the others believe he was retrieving a weapon in order to "scare them off." As Mills opened the trunk, Collins exited the Jeep and began to approach the Stratus.

While Collins, Holmes, and Sanford continued to exchange words with Harrington, Mills reentered the Kum & Go and shouted for her cousin, Montgomery. She then left the store, went back to her vehicle, and shut the trunk. Harrington then retreated to the passenger's side door while Mills walked to the driver's side door. As they opened their respective car doors, Harrington continued to exchange words with Collins, Holmes and Sanford. Collins and the others surrounded the vehicle with Collins moving from the driver's side of Mills' vehicle to the passenger's side. Harrington and Mills both shut their doors, and Harrington locked his door. Collins pulled at the passenger's side door handle but was unable to open Harrington's door. Holmes and Sanford were able to open the driver's side door and, while Sanford held the door, Holmes reached into the car in an effort to remove the keys from the ignition or possibly to release the lock on the passenger door. As he moved deeper into the car, Holmes struck Mills in the face. While Sanford continued to hold the door open, Holmes took a step back from the car and pointed toward the passenger side. Collins again pulled on Harrington's door handle, and the passenger's side door opened.

Once both doors were opened, Mills' Stratus lurched forward. Sanford released the door and took a step back from Mills' car. Mills then sped backwards and ran into the car that was parked immediately behind her at the gas pumps and pushed it several feet. Collins and Holmes were caught between the car and their respective doors as the car backed up. During this time, Holmes was reaching inside the car trying to get the keys out of the ignition. Holmes struck Mills in the face as the car was backing up. Despite some vision problems from the blow to the face, Mills was able to put her vehicle in drive and exit the parking lot. After a few moments, Holmes, Sanford, Collins, and Jackson got into

the Jeep and the third car that Mills struck when she backed up. The two vehicles then exited the parking lot heading the same direction as Mills and Harrington.

Mills and Harrington drove to the parking lot of Mills' apartment where Harrington called his mother. Mills fell unconscious while waiting for Harrington's mother to arrive. Mills was taken to the hospital where she was diagnosed with a subdural hematoma caused by a blow to the head she received from Holmes. She ultimately died from her injuries.

Sanford was charged by trial information with second-degree burglary in violation of section 713.5 on March 30, 2009. He was arraigned on April 9 and pled not guilty. He later waived his right to a speedy trial, and his case was joined for trial with Collins. On October 15, 2010, the State filed a motion to amend the trial information to charge Sanford as either the principal or an aider and abettor to first-degree burglary.[1] That same day, Sanford moved to dismiss the charge claiming that Mills' vehicle was not an occupied structure for purposes of the burglary statute, and therefore, the case should be dismissed as a matter of law. The motion was denied on October 25.

Sanford's trial commenced on October 26. The State rested its case on October 29, and Sanford moved for a judgment of acquittal, again arguing that there was insufficient evidence for the jury to convict Sanford of burglary because the State had not produced sufficient evidence that Mills' vehicle was an occupied structure. The motion was

---

[1]First-degree burglary is defined in section 713.3 and is a class "B" felony. Iowa Code § 713.3. While the amended trial information charges the defendant with first-degree burglary and a class "B" felony, it charges the defendant with violating section 713.5, which defines second-degree burglary, a class "C" felony. *Id.* § 713.5. Sanford did not raise this issue at trial and has not raised it on appeal.

denied. The jury found Sanford guilty of first-degree burglary on November 2.

Sanford filed a motion for a new trial on November 5, arguing, among other things, that the State engaged in prosecutorial misconduct by referring to the act as "premeditated" during closing arguments. Also, Sanford's counsel claimed that he spoke with jurors after the trial and the jurors indicated they believed Sanford and the others planned to go to the Kum & Go at the same time as Mills and their arrival was not a coincidence. Counsel claims this shows the jury was influenced by the improper argument of the State and that Sanford's trial was unfair. According to Sanford's counsel, the jurors believed that Sanford knew Holmes' plan to strike Mills based on Sanford's "apparent lack of candor" in his interview with the police. Since there was no evidence that Sanford knew of Holmes' plan to strike Mills, counsel asserted the verdict was contrary to the weight of evidence.[2] The motion was overruled on January 24, 2011, and Sanford was sentenced to an indeterminate term in prison not to exceed twenty-five years. Sanford appealed on January 25. We retained jurisdiction.

## II. Standard of Review.

Sanford claims there is insufficient evidence to establish that Mills' automobile was an occupied structure. Sufficiency of evidence claims are reviewed for a correction of errors at law. *State v. Keopasaeuth*, 645 N.W.2d 637, 639–40 (Iowa 2002). In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed "in the light most favorable to the State,

---

[2]Many of the errors alleged in Sanford's pro se brief are the same errors alleged in the November 5 motion for a new trial. Neither Sanford nor appellate counsel have argued or briefed that the verdict was contrary to the weight of the evidence on appeal. Therefore we do not consider it.

including all reasonable inferences that may be fairly drawn from the evidence." *Id.* at 640; *see also State v. Williams*, 695 N.W.2d 23, 27–28 (Iowa 2005). "[W]e will uphold a verdict if substantial record evidence supports it." *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006) (citation and internal quotation marks omitted). We will consider all the evidence presented, not just the inculpatory evidence. *Keopasaeuth*, 645 N.W.2d at 640. Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt. *Williams*, 695 N.W.2d at 27–28. "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." *Nitcher*, 720 N.W.2d at 556 (citation and internal quotations marks omitted).

## III. Discussion.

Through appellate counsel, Sanford claims there was insufficient evidence that Mills' vehicle was an occupied structure for purposes of the burglary statute. Through a pro se brief, Sanford has made several other claims relating to the district court's decision to grant the State's motion to amend the trial information, admit a video of the defendant's interview with police, deny a motion for a mistrial, and deny defendant's motion for a new trial. We will first address Sanford's claim that the State did not produce sufficient evidence to prove that Mills' vehicle was an occupied structure under Iowa Code section 702.12, which is one of the elements of a burglary conviction. *See* Iowa Code § 713.1.

**A. Was There Sufficient Evidence that Mills' Vehicle Was an Occupied Structure?** Though Iowa has historically followed the common law approach to burglary, the legislature rewrote the burglary

statute in 1978. *State v. Pace*, 602 N.W.2d 764, 769 (Iowa 1999). The Iowa Code now defines burglary as follows:

> Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, *enters an occupied structure*, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure, commits burglary.

Iowa Code § 713.1 (emphasis added). A person commits first-degree burglary, a class "B" felony, "if, while perpetrating a burglary in or upon an occupied structure in which one or more persons are present," the person intentionally or recklessly inflicts bodily injury on any person. Iowa Code § 713.3(1)–(2).

At common law, and under Iowa's pre-1978 statute, "only a 'dwelling house' could be the subject of the offense [of burglary]." *Pace*, 602 N.W.2d at 769. However, under the current Code, any occupied structure may be burglarized. Iowa Code § 713.1.

> An "*occupied structure*" is any building, structure, appurtenances to buildings and structures, *land*, water or air *vehicle*, or similar place adapted for overnight accommodation of persons, or *occupied by persons for the purpose of carrying on business or other activity therein,* or for the storage or safekeeping of anything of value. Such a structure is an "*occupied structure*" whether or not a person is actually present.

*Id.* § 702.12 (second and third emphasis added). This definition has two prongs: "The first describes the type of place that can be the subject of burglary, and the second considers its purpose or use." *Pace*, 602 N.W.2d at 769. "[A]ny building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place" satisfies the first prong of section 702.12. Iowa Code § 702.12. Mills' Dodge Stratus is clearly a land vehicle. This means that the pivotal issue in this case is

whether the second prong of the definition found in section 702.12 has been satisfied. *See Pace*, 602 N.W.2d at 770.

The second prong of section 702.12 requires us to consider the purpose or use of the place in question. *See id.* at 769. Under section 702.12, purposes or uses that make a particular place an occupied structure are whether the place has been "adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value." Iowa Code § 702.12; *see also Pace*, 602 N.W.2d at 770. Sanford correctly points out that there is no claim or evidence that Mills' car was adapted for overnight accommodation of persons or that it was occupied for the purpose of carrying on business. The only remaining inquiries, then, are whether the car was occupied for the purpose of carrying on an activity or for the storage or safekeeping of anything of value. If the State has produced sufficient evidence that Mills' car was used in a way that satisfies either element of this second prong, then the State has produced sufficient evidence that Mills' car was an occupied structure when Sanford, Holmes and Collins entered it. We will begin by determining whether Mills' car was "occupied by persons for the purpose of carrying on . . . other activity therein." Iowa Code § 702.12. If we conclude that it was, then Mills' car was an occupied structure and we need not address the question of whether the State produced sufficient evidence that the car was "for the storage or safekeeping of valuables." *See id.*

We begin by noting that

> [b]urglary was never intended to cover all structures, but only those occupied by reason of some activity occurring in the structure. Although our legislature expanded the definition of "occupied structure" beyond a common law

> "dwelling house" concept, it specifically retained the requirement that the subject matter of burglary be occupied in conjunction with some activity which takes place in the structure.

*Pace*, 602 N.W.2d at 771. The occupancy requirement contained in the second prong of section 702.12 "is consistent with the fundamental common law concept of burglary as an offense against security of occupancy." *Id.* It also ensures that section 702.12 will not be interpreted in a way that produces unreasonable results, such as charging a person who enters the "sidewalk or step of a house, without a right, license or privilege, with the intent to pick a flower from a pot located on the sidewalk or step" with burglary. *See id.* at 772.

Sanford was convicted of first-degree burglary. The jury was instructed that one of the elements of first-degree burglary was that Mills' car was an occupied structure. Since the jury convicted Sanford, it must necessarily have found that Mills' car was an occupied structure. According to the instruction, Mills' car could only qualify as an occupied structure if, among other things, it was occupied by persons for the purpose of carrying on activity. Sanford claims there is insufficient evidence to support such a finding. When reviewing that claim, we will draw all reasonable inferences in the State's favor. *Keopasaeuth*, 645 N.W.2d at 640.

Not all land vehicles will qualify for occupied-structure status under the statute. To qualify as an occupied structure, Mills' car must have been "occupied for the purpose of carrying on . . . other activity therein." Iowa Code § 702.12. In order to give effect to the limiting language found in section 702.12, we must not construe "other activity" so broadly that it renders the second prong of the statute superfluous. *See Pace*, 602 N.W.2d at 771 ("It is difficult to imagine an appurtenance

to a structure that would not fall within the definition of an 'occupied structure' if merely walking over or momentarily standing upon an appurtenance was occupancy for the purpose of carrying on an activity."). In this case, Harrington was attempting to scare off a group of people by pretending he had a weapon in the trunk of Mills' car. Once this ploy failed, Harrington sought shelter inside Mills' car and locked the door of the car so that Collins and the others could not enter the car and assault him. Mills also entered the car and shut her door.

Harrington's intent was obvious. Both the surveillance video and Harrington's testimony show he was using Mills' car to protect himself from assault. It would not have been unreasonable for a jury to conclude that seeking shelter from assailants and protecting oneself are activities that could occur in cars. Cars have doors that lock. The lock on a car door might serve to protect valuables when the car is empty, but that same lock also helps insure the safety of the driver and passengers when the car is occupied. This case demonstrates how a locked car door could serve this very purpose. Initially, because Harrington locked his door, Collins was unable to open the door and assault him.

While "our interpretation of occupied structure has been in a stage of gestation," *State v. Davis*, 671 N.W.2d 28, 30 (Iowa 2003), we believe that seeking refuge in a locked motor vehicle is the type of other activity that would qualify a land vehicle as an occupied structure under section 702.12. Seeking refuge from assailants may not be the primary use of an automobile. However, under section 702.12, the vehicle's primary use is not determinative. In *State v. Buss*, we noted that the statute does not require us to examine the "primary use" of the vehicle. *See Buss*, 325 N.W.2d 384, 386 (Iowa 1982) (finding that section 702.12 does not contain any "qualifying language", and therefore, it was not necessary

that the passenger compartment be primarily used for the storage or safekeeping of valuables in order to be considered an occupied structure). Section 702.12 does not require the primary use of the vehicle to be the carrying on of an activity, such as keeping safe from assailants. The plain language of the statute only requires that the vehicle be occupied "for the purpose of carrying on . . . other activity therein." Iowa Code § 702.12.

While this interpretation certainly complies with the plain language of this broadly worded statute, it is also consistent with the traditional purpose of burglary laws. "[A]lthough the common-law conception of burglary has been expanded, the essence of the offense remains the same: an intrusion into the structure of another with the intent to commit a crime therein." 3 Charles E. Torcia, *Wharton's Criminal Law* § 331, at 302 (15th ed. 1995); *see also State v. Shannon*, 554 P.2d 743, 744 (Mont. 1976) ("The primary gravamen of burglary at common law . . . is 'the threat to [a] person resulting from the wrongful intrusion.' " (citations omitted)); 13 Am. Jur. 2d *Burglary* § 3, at 219 (2009) ("The purpose of burglary statutes is to protect possessory rights with respect to structures and conveyances, to define prohibited space and to protect the integrity of the home." (footnotes omitted)).

Our interpretation also respects the legislature's choice not to include every land vehicle within the definition of an occupied structure. Mills' car had doors and locks that would give the occupants a sense of security and repose while they occupied it that would not be possible in other land vehicles. *See Pace*, 602 N.W.2d at 772. Moreover, these doors and locks would objectively indicate to others that the occupants intended the land vehicle to be a private area. This is evidenced by the fact that it was only after Sanford and Holmes managed to unlock the

door from the other side that Harrington faced a drastically increased risk of being assaulted by Collins. Burglary laws are not designed to deter the crime the perpetrator intends to commit. *Pace*, 602 N.W.2d at 768. Instead,

> burglary laws are . . . designed primarily to protect against the creation of a situation dangerous to personal safety caused by unauthorized entry.
>
> The deterrence of the trespass and the crime intended to be committed within is of secondary importance, and the laws are primarily designed not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety.

13 Am. Jur. 2d *Burglary* § 3, at 219 (2009) (footnotes omitted); *see also Pace*, 602 N.W.2d at 768. Other courts have noted that burglary recognizes the inherent danger of invading secured, private space:

> In the archetypal burglary an occupant of a dwelling is startled by an intruder who may inflict serious harm on the occupant in his attempt to commit the crime or to escape from the house. The frightened occupant, not knowing whether the intruder is bent on murder, theft, or rape, may in panic or anger react violently, causing the burglar to retaliate with deadly force.

*State v. Lozier*, 375 So. 2d 1333, 1337 (La. 1979) (citing *People v. Lewis*, 79 Cal. Rptr. 650, 655 (Ct. App. 1969)).

We have held on a number of occasions that the passenger compartment of a land vehicle is an occupied structure for purposes of our burglary statute. *Davis*, 671 N.W.2d at 29–30 (finding defense counsel did not breach an essential duty by failing to argue that the passenger compartment of a car was not an occupied structure); *Buss*, 325 N.W.2d at 385–86 (finding the passenger compartment of a pickup truck is an occupied structure under Iowa's burglary statute); *see also Weaver v. Iowa*, 949 F.2d 1049, 1050 (8th Cir. 1991) (finding an

automobile is an occupied structure under Iowa law). A number of other courts have also found that entering the passenger compartment of a vehicle is sufficient to sustain a burglary conviction. *See* Jeffrey F. Ghent, Annotation, *Burglary, Breaking, or Entering of Motor Vehicle*, 72 A.L.R.4th 710, 730–34 (1989) (collecting cases). This case provides an example of how entering a vehicle intending to commit an assault on one of the occupants can lead to a dangerous situation that ultimately proved fatal to one of the occupants of the vehicle.

Holmes, Sanford and Collins exchanged words with Harrington, who sought shelter in Mills' car. With Sanford's assistance, Holmes then entered Mills' car and attempted to unlock the doors or turn the car off. Entering the car led to Mills receiving a fatal blow to the face and to her evading the three assailants by first accelerating forward and then backwards into another car before driving off. Thus, the entry into Mills' car created a situation that was dangerous to the personal safety of not only victims but to anyone who happened to be in the parking lot that night.

Our conclusion that a personal automobile can be an occupied structure is bolstered by the legislature's reaction to our interpretation of section 702.12. "We assume the legislature 'is familiar with the holdings of this court relative to legislative enactments and that if we have improperly decided what their intention was they will by additional legislation state the real intention.'" *Welch v. Iowa Dep't of Transp.*, 801 N.W.2d 590, 600 (Iowa 2011) (quoting *Mallory v. Paradise*, 173 N.W.2d 264, 266 (Iowa 1969)). When the legislature amends some parts of a statute following a recent interpretation, but leaves others intact, this "may indicate approval of interpretations pertaining to the unchanged and unaffected parts of the law." 2B Norman J. Singer & J.D. Shambie

Singer, *Statutes and Statutory Construction* § 49:10, at 144 (7th ed. 2008).

In 1981, we decided *State v. Newman*, 313 N.W.2d 484 (Iowa 1981). In that case, we were asked to determine whether a coin changing machine was an "enclosed area" as that term was used in section 713.1. *Newman*, 313 N.W.2d at 486. Since enclosed area was not defined in the statute, we relied on the common meaning of the words used in the statute. *Id.* We held that the size of the enclosed area was not a relevant consideration under the statute and affirmed the conviction. *Id.* at 487. Four justices dissented, finding that breaking into a change machine would not constitute burglary. *Id.* at 487 (Uhlenhopp, J., dissenting).

In 1984, the legislature responded to our holding in *Newman* by amending the definitions of the terms occupied structure, burglary and attempted burglary. *State v. Williams*, 409 N.W.2d 187, 188–89 (Iowa 1987). The following sentence was added to section 702.12:

> However, for purposes of chapter 713, a box, chest, safe, changer, or other object or device which is adapted or used for the deposit or storage of anything of value but which is too small or not designed to allow a person to physically enter or occupy it is not an "occupied structure".

1984 Iowa Acts ch. 1247, § 1 (codified at Iowa Code § 702.12). Sections 713.1 and 713.2, which define burglary and attempted burglary, were also modified. *Id.* §§ 2, 3. The references to enclosed areas were removed along with references to "other place[s] where anything of value is kept." *Id.*

The passenger compartments of personal automobiles have been considered occupied structures since we decided *Buss* in 1982. 325 N.W.2d at 386. After the 1984 amendments, we continued to hold that

"[t]he definition of an occupied structure still includes a land vehicle." *Williams*, 409 N.W.2d at 189. The fact that the legislature reacted to one of our cases by modifying the burglary laws to specifically exclude change machines, but did not react to our decision in *Buss* by specifically excluding personal automobiles, further convinces us that the legislature intended to include personal automobiles in the definition of occupied structure, so long as the automobile was used for one of the purposes contained in section 702.12.

Subsequent modifications to the burglary statutes bolster this conclusion. In 2001, the legislature modified the definition of third-degree burglary to include the "burglary of an *unoccupied* motor vehicle or motor truck." 2001 Iowa Acts ch. 165, § 1 (codified at Iowa Code § 713.6A(2)) (emphasis added). However, the legislature left the definition of an occupied structure unchanged. By defining third-degree burglary as the burglary of an unoccupied motor vehicle, the legislature indicated its approval of including an *occupied* motor vehicle in the definition of an occupied structure.

In this case, the jury found Mills' car was an occupied structure under section 702.12. Substantial evidence supports this finding. Several witnesses described Mills' vehicle being surrounded by assailants. These accounts are confirmed by the surveillance video, which clearly shows the vehicle being swarmed by Sanford and others. Harrington himself describes retreating into the safety of Mills' vehicle in an attempt to get away from his assailants because they were "trying to jump me." The evidence clearly shows that Harrington was facing a dangerous situation, and he retreated to Mills' automobile in order to keep himself safe and secure from these assailants. Upon entering Mills' vehicle, Harrington immediately locked his door to keep the assailants

out. In order to attack Harrington, these assailants entered the area where he had sought refuge and, in doing so, were able to unlock his door, open it, and in the process, inflict a fatal injury to the other occupant of the car. They also set in motion a very dangerous situation when Mills backed her vehicle up at a high rate of speed in order to avoid being further assaulted. We conclude that, based on the facts of this case, there was sufficient evidence that Mills' car constituted an occupied structure under section 702.12.

**B. Sanford's Pro Se Claims on Appeal.** Sanford has filed a pro se brief in which he makes several additional claims. He first claims the district court erred when it granted the State's October 15 motion to amend the trial information. However, Sanford did not resist the motion at the time. Sanford also claims the court erred when it admitted an edited portion of his interview with the police, as opposed to the full, unredacted version. Sanford did not object when the State offered the video at trial. "Issues on appeal not raised in the district court are deemed waived." *State v. Meyers*, 799 N.W.2d 132, 147 (Iowa 2011).

Sanford claims that the district court erred in not granting a mistrial when Marqualis Montgomery mentioned the fact that Mills died from her injuries. Prior to trial, Sanford filed a motion in limine that sought to preclude any mention of Mills' death. The district court granted the motion but held that the State could present evidence that Mills was injured. At trial, two different defense witnesses made reference to the fact that Mills died from her injuries. Sanford moved for a mistrial, and the district court denied the motion. The district court also instructed the jury that it was not to consider the fact that the victim died. Jurors are presumed to follow instructions. *State v. Hanes*, 790 N.W.2d 545, 552 (Iowa 2010). The jury already heard that Mills

suffered a head injury. Sanford has not explained how failing to grant a mistrial once the jurors heard that Mills died from that injury was a clearly unreasonable ruling. *See State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006). Accordingly, this claim also fails.

Lastly, Sanford claims the district court should have granted a new trial based on statements jurors made to Sanford's trial counsel about the impact the video had on jury deliberations. Jurors are not permitted to testify regarding their deliberations under Iowa Rule of Evidence 5.606(*b*). Accordingly, Sanford has no competent evidence upon which he can rely to support his claims regarding the jury's deliberations.

### IV. Disposition.

The State produced sufficient evidence that Mills' vehicle, under the facts of this case, was an occupied structure as that term is defined in section 702.12. We also reject each of Sanford's pro se claims. Accordingly, we affirm his conviction for first-degree burglary.

**AFFIRMED.**