# IN THE COURT OF APPEALS OF IOWA

No. 17-2056
Filed November 7, 2018

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**MUBARAK MATTA MUBARAK,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

Mubarak Mubarak appeals his conviction for robbery in the first degree.

**AFFIRMED.**

Jessica Maffitt of Benzoni Law Office, PLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

Mubarak Mubarak appeals his conviction for robbery in the first degree. He argues insufficient evidence supports his conviction and his sentence is illegal as being grossly disproportional. Because we find the State presented sufficient evidence to identify Mubarak as the perpetrator and his sentence is not illegal as being disproportionate to the crime, we affirm.

## I.      Background Fact and Proceedings

Early on September 24, 2016, Eh Nwe drove from work to his home at an apartment complex in Des Moines. Shortly before 1:00 a.m., he parked at his complex, but, before he exited his car, a man approached him on foot. Nwe could not "see his face very clear," but he described the man as black, about five foot and nine or ten inches tall, and not fat. He wore torn blue jeans, a long black jacket with a zipper and a hood that covered his head, and a round silver earring in his right ear. Nwe locked his door "for safety." The man set a Budweiser beer can on top of Nwe's car and told Nwe to give him his phone. Nwe rolled his window down half-way, thinking the man may have needed help. When Nwe did not give up his phone, the man pointed a gun at Nwe's head and told him to hand over his wallet. Nwe was able to deflect the man's hand, roll up the window, and back up the car, which shined the car's lights on the man. Nwe immediately called 911 and was able to drive away without surrendering anything. Minutes later, Officer Kyle Thies arrived and met with Nwe. Nwe described the man to Officer Thies, pointed to the area where the man went, and entered his apartment.

Officer Thies proceeded to the location Nwe indicated—about fifty yards from where the incident occurred—where he found Mubarak and three other

individuals. Mubarak wore a black jacket, blue jeans, and an earring, and he had a can of beer in his hand. Mubarak's appearance was "identical" to the description Nwe provided, and the other three individuals at the scene did not match the description. Officer Thies detained, patted down, and questioned all four individuals, and he searched two vehicles known to be associated with the individuals. He found a gun and a loaded magazine on Mubarak, and he did not find any other weapons when searching the other individuals and the vehicles. Another officer brought Nwe to Officer Thies, and Nwe confirmed Mubarak "look[s] like" the man who pointed a gun at him. Officer Thies told Mubarak he would be charged with robbery in the first degree, and Officer Thies testified Mubarak said the charge was not appropriate "[b]ecause he didn't take anything and [Nwe] did not give him anything."

A trial was held October 30 and 31, 2017, after which the jury found Mubarak guilty of robbery in the first degree. The district court sentenced him to a term of incarceration not to exceed twenty-five years with a mandatory minimum sentence of seventy percent or seventeen-and-one-half years. Mubarak now appeals. He argues the evidence identifying him as the perpetrator is insufficient to support his conviction and his sentence is illegal as being grossly disproportional.

## II.    Standard of Review

We review insufficient-evidence claims for errors at law. *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017). "We review de novo a constitutional challenge to an illegal sentence." *State v. Hoeck*, 843 N.W.2d 67, 70 (Iowa 2014).

### III.    Sufficiency of the Evidence

Mubarak argues the State did not present sufficient evidence to support his conviction for robbery in the first degree.[1]  A verdict has sufficient evidence if it is supported by substantial evidence.  *Ramirez*, 895 N.W.2d at 890.  "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt."  *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).

Nwe contacted police immediately after the robbery.  Officer Thies arrived a few minutes later and spoke to Nwe to learn the description and location of the robber.  Officer Thies then found Mubarak and three other individuals near the location Nwe provided.  Of those four individuals, only Mubarak matched Nwe's description, and only Mubarak possessed a firearm.  Nwe viewed Mubarak at the scene and confirmed he looked like the robber.  While in custody, Mubarak voluntarily—and erroneously—claimed he could not have committed a robbery because he never took anything from Nwe.  This is substantial evidence to

---

[1] Mubarak does not challenge the proof of the elements under Iowa Code section 711.1 (2016):

> 1. A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:
> > a. Commits an assault upon another.
> > b. Threatens another with or purposely puts another in fear of immediate serious injury.
> > c. Threatens to commit immediately any forcible felony.
> 2. It is immaterial to the question of guilt or innocence of robbery that property was or was not actually stolen.

Under Iowa Code section 711.2, "robbery in the first degree" occurs "when, while perpetrating a robbery, the person purposely inflicts or attempts to inflict serious injury, or is armed with a dangerous weapon."

convince a rational jury beyond a reasonable doubt that Mubarak committed robbery in the first degree.

Mubarak acknowledges Nwe may have been the victim of a robbery, but he claims the evidence is insufficient to identify him as the robber. He speculates the robber was unlikely to remain at the scene. He also notes Nwe provided few details about the robber's physical appearance, never saw the robber's face clearly, and could only say Mubarak "look[ed] like" the robber. Mubarak was able to present these arguments to the jury, but the jury was entitled to reject his arguments and rely on the substantial evidence described above in reaching its verdict. Even considering his evidentiary arguments, the verdict is still supported by sufficient evidence.

## IV.    Legality of the Sentence

Mubarak next argues his sentence is grossly disproportionate to the crime under the Eighth Amendment to the United States Constitution and Article 1, Section 17 of the Iowa Constitution. *See State v. Bruegger*, 773 N.W.2d 862, 873 (Iowa 2009) (citing *Solem v. Helm*, 463 U.S. 277, 292 (1983)).

> In evaluating whether a lengthy sentence is grossly disproportionate under the Cruel and Unusual Punishment Clause, the Supreme Court has developed a three-part test. The first part of the test, sometimes referred to as the threshold test, involves a preliminary judicial evaluation of whether the sentence being reviewed is grossly disproportionate to the underlying crime. This preliminary test involves a balancing of the gravity of the crime against the severity of the sentence. The Supreme Court has not articulated what factors go into this initial determination, but has stated that it is a rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.
>
> If the threshold test has been crossed, the Supreme Court proceeds to steps two and three. In step two, the Supreme Court engages in intrajurisdictional analysis, comparing the challenged

sentence to sentences for other crimes within the jurisdiction. In step three, the Supreme Court engages in interjurisdictional review, comparing sentences in other jurisdictions for the same or similar crimes. These last two steps introduce objectivity into the determination of gross disproportionality.

*Id.* (internal citations and quotation marks omitted).

Our supreme court has previously found the sentence for robbery in the first degree is generally not grossly disproportionate to the underlying crime. *State v. Lara*, 580 N.W.2d 783, 784–86 (Iowa 1998) ("The risk of death or serious injury to persons present when first-degree robbery is committed is high. A twenty-five year prison sentence with a requirement that the inmate serve at least eighty-five percent of the sentence does not lead to an inference of gross disproportionality."). While Mubarak faces a lesser mandatory minimum sentence than the defendant in *Lara*, he argues his age makes his sentence grossly disproportionate. *See id*. He notes Iowa has recognized "adolescents 'deserve less punishment because adolescents may have less capacity to control their conduct and to think in long-range terms than adults.'" *State v. Null*, 836 N.W.2d 41, 60 (Iowa 2013) (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982)); *see also State v. Lyle*, 854 N.W.2d 378, 400 (Iowa 2014) (finding "all mandatory minimum sentences of imprisonment for youthful offenders" violate the Iowa constitution).

Mubarak was born in November 1997, more than eighteen years prior to the events of September 24, 2016. The Iowa Code provides special provisions for juveniles not available to adult offenders. *See, e.g.*, Iowa Code § 901.5(14) (allowing courts to suspend the sentences of certain offenders under the age of eighteen years at the time of the offense). However, we must defer to the legislature's decision to limit these protections to offenders under the age of

eighteen years. *See Lara*, 580 N.W.2d at 785 ("Substantial deference is afforded to the legislature in setting the penalty for crimes."). Our supreme court has declined to extend the protections for juveniles to adult offenders. *See Lyle*, 854 N.W.2d at 403 ("[O]ur holding today has no application to sentencing laws affecting adult offenders. Lines are drawn in our law by necessity and are incorporated into the jurisprudence we have developed to usher the Iowa Constitution through time."). Therefore, considering the severity of the offense and Mubarak's age of eighteen years at the time of the offense, his sentence is not grossly disproportionate to the underlying crime.

## V.    Conclusion

The State presented sufficient evidence to support Mubarak's conviction for robbery in the first degree. Also, because robbery in the first degree is a serious offense and he was eighteen years old at the time of the offense, his sentence is not grossly disproportionate to the underlying crime. Therefore, we affirm his conviction and sentence.

**AFFIRMED.**