# IN THE COURT OF APPEALS OF IOWA

No. 18-2124
Filed January 21, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JARON NARELLE PURHAM,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Des Moines County, Mary Ann Brown, Judge.

Jaron Purham appeals his judgment and sentence for first-degree murder. **AFFIRMED.**

Peter Stiefel, Victor, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

Jaron Purham appeals his judgment and sentence for first-degree murder. He contends (1) the evidence was insufficient to support the jury's finding of guilt; (2) a recent statutory provision addressing general verdicts does not apply to his case; (3) his trial attorney was ineffective in failing to object to a jury instruction on specific intent in the aiding-and-abetting context; and (4) the district court abused its discretion in admitting a video depicting sex and linking him to the location of the crime.

## I.  Sufficiency of the Evidence

The jury was instructed the State would have to prove the following elements of first-degree murder:

> 1. On or about March 2, 2016, the defendant individually or someone he aided and abetted shot [K.J.]
> 2. [K.J.] died as a result of being shot.
> 3. The defendant individually or someone he aided and abetted acted with malice aforethought.
> 4. The defendant individually or someone he aided and abetted acted willfully, deliberately, premeditatedly, and with specific intent to kill [K.J.] and/or he individually or someone he was aiding and abetting was participating in the offense of kidnapping.

The jury returned a general verdict finding Purham guilty.

On appeal, Purham challenges the sufficiency of the evidence supporting the finding of guilt as either a principal or aider and abettor, "under a premeditated murder theory" and "under a felony murder theory with kidnapping as the underlying felony."  "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'"  *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa

2012) (citation omitted). We will uphold a verdict if it is supported by substantial evidence. *Id.*

A reasonable juror could have found the following facts. Sixteen-year-old K.J. was hanging out with a friend in Burlington, Iowa. They walked to Hy-Vee so K.J. could use the Wi-Fi connection. After twenty to twenty-five minutes, K.J. walked his friend halfway home to accommodate the friend's 9:00 p.m. curfew. He returned to Hy-Vee, where he had left his backpack and computer. Hy-Vee's video surveillance captured him alone at 8:55 p.m.

Meanwhile, Purham and Jorge Sanders-Galvez left the house where they were "hanging out" and went "around the corner" to Hy-Vee to get some food. Video surveillance captured a red Impala pulling into the parking lot at 9:38 p.m. Purham exited the driver's seat and entered Hy-Vee at 9:41 p.m. He was recorded at the cash register with food and drink. Sanders-Galvez also entered and made a purchase. At 10:03 p.m., Purham and Sanders-Galvez left the store.

At that point, K.J. was standing next to a trash bin outside the store. He began walking in a northeasterly direction. The Impala followed in the same direction. On K.J.'s arrival at another friend's house, K.J. told his friend "he was scared, that Lumi was following him." Sanders-Galvez went by the nickname "Lumni" or "Lumi." The friend looked out the window and saw a car "that was illegally parked" "[o]n the wrong side of the street," with "the end of the car in the front of the house," and the brake lights on. The car was "[r]ed." K.J., who sometimes dressed as a female, borrowed some bras from his friend, stayed for "five minutes to ten minutes," then left.

Later that evening, a woman awoke to gunshots and saw "headlights coming up [the] alley" "across the street." She called the police department.

Burlington police officers found K.J.'s "body lying in some tall grass next to a garage." They smelled bleach and noticed a bottle of bleach between K.J.'s legs. A black trash bag was tied over K.J.'s head, his arms were over his head, his shirt was up, and he was not wearing shoes. The trash bag matched those in a box of Dollar General bags seen in the garage of the house Purham and Sanders-Galvez frequented. The distinctive bags had "white suffocation warning[s]" and "pink handles or drawstrings." Blue fibers were found on K.J.'s clothing. The fibers matched fibers taken from a bedsheet in the room of the house in which K.J.'s backpack, school ID, computer, and shoes were found, together with the bras he obtained from his friend. K.J. sustained two bullet wounds to his chest.

Police extracted data from Purham's phone linking him to the house at which K.J.'s belongings were discovered. According to the lead detective with the department of criminal investigation, Purham had "no active cell phone usage on his end" from 10:04 p.m. to 11:36 p.m. In the detective's words, Purham "did not use his phone at all during that time."

Purham stipulated that he was arrested in Missouri driving a red Impala. He also stipulated "[a] search of that vehicle recovered, among other things, a loaded .357 Magnum revolver on the driver's side floorboard and a matching box of .357 Magnum bullets in the front console." Purham's belongings were found in the Impala, including mail addressed to him at the Burlington house in which K.J.'s belongings were discovered.

The division of criminal investigation interviewed Purham. He stated that "upon exiting the Hy-Vee and getting into the red Impala they noticed a girl with curls in her hair . . . standing at a corner near the Hy-Vee." They "approached the female . . . and then the female entered the vehicle in one of the rear seats." Purham also admitted staying at the house in which K.J.'s belongings were found "a couple days leading up to" K.J.'s death. And he admitted the gun found in the red Impala was his.

Substantial evidence supports the jury's finding of guilt on the willful, deliberate, and premeditated alternative of first-degree murder. Substantial evidence also supports a finding that he acted either as a principal or as an aider and abettor.

We turn to the felony-murder-by-kidnapping alternative. Purham argues "[t]he State produced insufficient evidence to conclude that K.J.'s confinement or removal had significance apart from his murder." We addressed the identical argument in *Sanders-Galvez*'s appeal of his first-degree murder conviction. *See State v. Sanders-Galvez*, No. 17-2059, 2019 WL 2145707, at *2 (Iowa Ct. App. May 15, 2019). After summarizing events preceding the discovery of K.J.'s body, we stated:

> [T]he jury reasonably could have found that Sanders-Galvez confined and removed K.J., as required for commission of kidnapping. Specifically, the jury could have found "secret confinement" based on the presence of K.J.'s belongings in the upstairs bedroom of the house Sanders-Galvez frequented; the bag over K.J.'s head and the signs of his struggle to extricate himself; the bleach injuries to his body; and his placement in a stand of tall grass. *See State v. Albright*, 925 N.W.2d 144, 156 (Iowa 2019). The jury could have found removal based on K.J.'s apparent presence on the bed in the upstairs bedroom and his later discovery in an alley, partially hidden by tall grass.

*Sanders-Galvez*, 2019 WL 2145707, at \*2–3 (footnotes omitted). The evidence presented in Purham's trial was virtually identical. Substantial evidence supports the felony-murder-by-kidnapping theory of first-degree murder as applied to Purham, either as principal or as an aider and abettor.

## II.     Iowa Code section 814.28

Iowa Code section 814.28 (2019), which became effective on July 1, 2019, states:

> When the prosecution relies on multiple or alternative theories to prove the commission of a public offense, a jury may return a general verdict. If the jury returns a general verdict, an appellate court shall not set aside or reverse such a verdict on the basis of a defective or insufficient theory if one or more of the theories presented and described in the complaint, information, indictment, or jury instruction is sufficient to sustain the verdict on at least one count.

Purham argues the provision "does not apply to [his] case." In light of our conclusion that sufficient evidence supports both alternatives of first-degree murder and Purham's participation either as principal or as an aider and abettor, we need not reach the issue.

## III.     Ineffective Assistance of Counsel – Jury Instruction

Purham claims his trial attorney was ineffective in failing to "object to [a] [j]ury [i]nstruction['s] incomplete language on specific intent and aiding and abetting." We do not decide ineffective-assistance claims on direct appeal if the record is insufficient to permit review. *See State v. Harris*, 919 N.W.2d 753, 754 (Iowa 2018). Instead, we allow the defendant to raise the claim in a separate

postconviction-relief action. *Id.*[1] We find the record adequate to address the issue. *See State v. Rodriguez*, Nos. 0-691, 99-161, 2001 WL 23001, at *1 (Iowa Ct. App. Jan. 10, 2001); *cf. State v. Feye*, No. 07-0797, 2008 WL 2514740, at *4 (Iowa Ct. App. Jun. 25, 2008) (preserving issue for postconviction relief). To prevail, Purham must show (1) counsel breached an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The aiding-and-abetting instruction stated:

> All persons involved in the commission of a crime, whether they directly commit the crime or knowingly "aid and abet" its commission, shall be treated in the same way.
>
> "Aid and abet" means to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove the defendant's earlier participation. Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting." Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting."
>
> The guilt of a person who knowingly aids and abets the commission of a crime must be determined only on the facts which show the part he has in it, and does not depend upon the degree of another person's guilt.
>
> If you find the State has proved the defendant directly committed the crime, or knowingly "aided and abetted" another person in the commission of the crime, then the defendant is guilty of the crime charged.

---

[1] That procedure is now required. *See Macke*, 933 N.W.2d at 231 ("Section 814.7 as amended in Senate File 589 eliminates the ability to pursue ineffective-assistance claims on direct appeal."); *cf. State v. El-Amin*, No. 19-0925, 2020 WL 7409994, at *3 (Iowa Ct. App. Dec. 18, 2020) ("Because the district court entered El-Amin's judgment of conviction and sentence before July 1, 2019, this case is not governed by the amendments that year to Iowa Code sections 814.6 and 814.7 restricting appeals from guilty pleas and ineffective-assistance-of-counsel claims.").

The instruction did not include the following language recommended for specific-intent crimes in a comment to uniform jury instruction 200.8:

> The crime charged requires a specific intent. Therefore, before you can find the defendant "aided and abetted" the commission of the crime, the State must prove the defendant either has such specific intent or "aided and abetted" with the knowledge the others who directly committed the crime had such specific intent. If the defendant did not have the specific intent, or knowledge the others had such specific intent, he is not guilty.

This court has confronted the omitted specific-intent language in a host of appeals, most recently in *State v. Hill*, No. 18-1583, 2020 WL 564810, at *4–5 (Iowa Ct. App. Feb. 5, 2020).[2] There, we preliminarily found sufficient evidence to support findings of guilt on a charge of second-degree theft "either directly or by the aiding-abetting theory." 2020 WL 564810, at *3. We next considered the omission of specific intent language from the aiding-and-abetting instruction. We concluded, "Even if the jury received [the] instruction . . . with the requisite language on specific intent it is unlikely a reasonable jury could come to the conclusion [the defendant] did not possess specific intent." *Id.* at *5. We concluded "no prejudice . . . resulted and [the defendant's] ineffective-assistance claim fail[ed]." *Id.*

---

[2] *See also Daniels v. State*, No. 18-0672, 2019 WL 6894225, at *4–5 (Iowa Ct. App. Dec. 18, 2019); *State v. Robinson*, No. 17-1416, 2019 WL 319839, at *3 (Iowa Ct. App. Jan. 23, 2019); *State v. Vinsick*, No. 17-1344, 2018 WL 3472043, at *6 (Iowa Ct. App. July 18, 2018); *State v. Braden*, No. 13-2014, 2015 WL 359454, at *3 (Iowa Ct. App. Jan. 28, 2015); *State v. Hubert*, No. 13-0515, 2014 WL 1494905, at *1–2 (Iowa Ct. App. Apr. 16, 2014); *State v. Bergstrom*, No. 13-0144, 2014 WL 956068, at *2 n.1 (Iowa Ct. App. Mar. 12, 2014); *State v. Burton*, No. 12-2223, 2013 WL 5760635, at *4–5 (Iowa Ct. App. Oct. 23, 2013); *State v. Sims*, No. 11-1887, 2013 WL 530583, at *4 (Iowa Ct. App. Feb. 13, 2013); *Shepherd v. State*, No. 09-0598, 2010 WL 2757081, at *5 (Iowa Ct. App. July 14, 2010); *Feye*, 2008 WL 2514740, at *3–4; *Houston v. State*, No. 05-1591, 2007 WL 254543, at *3–5 (Iowa Ct. App. Jan. 31, 2007); *State v. Perez-Castillo*, No. 05-0362, 2006 WL 2419143 at *3 (Iowa Ct. App. Aug. 23, 2006); *Rodriguez*, 2001 WL 23001, at *1.

On our de novo review, we are similarly persuaded that there is no reasonable probability of a different outcome had Purham's trial attorney objected to the omission of the specific-intent paragraph from the aiding-and-abetting instruction and had it been included. That is because the evidence of Purham's guilt as a principal or as an aider-and-abettor and under either charged alternative was overwhelming. *See State v. Lorenzo Baltazar*, 935 N.W.2d 862, 872 (Iowa 2019). We conclude Purham's ineffective-assistance-of-counsel claim fails on the *Strickland* prejudice prong.

## IV. *Admission of Video*

Prior to trial, Purham filed a motion in limine to exclude a twenty-five second video recorded by Sanders-Galvez showing Purham engaged in sex with an unidentified woman at the house in which K.J.'s backpack was found. Following on-the-record arguments, the district court denied the motion. The court reasoned that the video was "relevant in proving the connection of Mr. Purham to" the house in which "the belongings of the victim are located." The court also stated "the fact that Mr. Purham and Mr. Sanders-Galvez may have taken a single female to that location in the past and had sex with them is also relevant to plan, preparation, maybe absence of mistake even." The court confirmed its ruling was final.

Purham contends the district court abused its discretion in admitting the evidence. He argues the evidence was irrelevant and unfairly prejudicial. *See* Iowa Rs. Evid. 5.401 (stating "[e]vidence is relevant if: a. [i]t has any tendency to make a fact more or less probable than it would be without the evidence; and b. [t]he fact is of consequence in determining the action"), 5.403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a

danger of . . . unfair prejudice . . . ."). The court of appeals addressed the identical assertion in *Sanders-Galvez*. *See* 2019 WL 2145707, at *4–5. There, the State contended the video supported its theory of a sexual encounter "gone wrong." We stated:

> To extrapolate a purpose to abduct K.J., confine him in an upstairs room, have sex with him, envelope his head in a bag to the point of near suffocation, move him to an alley, pour bleach on him, and shoot him because the sexual encounter "went wrong" is to read too much into the twenty-five second video.

*Id.* at *5. We "conclude[d] the phone video was irrelevant on the question of Sanders-Galvez's motive to kill." *Id.*

Here, the prosecutor argued the video was relevant to explain the pair's motive in "pick[ing] up a gay or cross-dressing high school boy that they didn't even know and bring[ing] him back to [the house]." As in *Sanders-Galvez*, we are unpersuaded by the State's rationale. To repeat, "[t]he video was simply a childish attempt to capture a sex act." *Id.* It bore scant if any relevance to Purham's motive for the killing.

We are also unpersuaded by the State's trial assertion that the video "show[ed] the connection to the crime scene." As we stated in *Sanders-Galvez*,

> The video also was not required to establish Sanders-Galvez's connection to the co-defendant or the location of the crime. The State established both through Hy-Vee surveillance video and the testimony of law enforcement officers and friends. Indeed, one of the friends' description of the home's interior, including a spiral staircase leading up to the bedroom, lays to rest the assertion that the video was needed to confirm those details.

*Id.* That same evidence was produced in Purham's case. As in *Sanders-Galvez*, we conclude the video was irrelevant. Additionally, we conclude the error in admitting the irrelevant evidence was harmless. *See id.* In light of our conclusion,

we need not address Purham's contention that the sex act captured in the video rendered its admission unfairly prejudicial.

We affirm Purham's judgment and sentence.

**AFFIRMED.**