# IN THE COURT OF APPEALS OF IOWA

No. 20-0279
Filed March 3, 2021

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**BRADLEY STEVEN GRAHAM,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, David Porter, Judge.

Bradley Graham appeals the judgment finding him guilty of two counts of forgery and one count of third-degree theft. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

On June 10, 2019, Bradley Graham entered a branch of a credit union to cash a check. Graham had an account at the credit union and was known to the tellers. The check Graham presented was made payable to Graham in the amount of $995.56 and purported to be drawn on the account of "Fawn Manufactering." Despite the spelling error and other facial issues with the check,[1] a teller cashed it for Graham.

About four hours later, Graham returned to the credit union and presented a second check to cash to the same teller. The second check was in the same amount as the first and appeared to be identical in all respects except the second check bore a check number one number higher than the first. The teller became suspicious of the similarities between the checks, finding it particularly odd that the same customer would have a second check for an identical amount dated on the same date. The teller took the second check to the credit union manager.

The manager determined both checks were counterfeit and confronted Graham. During their conversation, Graham stated the checks were payment for landscaping work he had done and the sequential check numbers had to do with back pay he was owed. The manager learned Graham had already spent the cash received from cashing the first check. When Graham was informed the credit union would not cash the second check and he would need to reimburse the credit union for the proceeds of the first check, Graham agreed to a repayment plan.

---

[1] The teller noted the check was "a little off," but it "didn't really raise a flag." Closer scrutiny of the check later revealed it had mismatched routing numbers, fonts of different sizes, and lighter printing on some areas.

However, after being allowed to leave, Graham did not return to the credit union. He did not reimburse the credit union and did not contact the manager. The manager contacted the police.

Police investigation revealed Graham had been employed by Fawn Manufacturing for about one month approximately two years prior to the dates on the checks. Graham did not do any landscaping or other work for Fawn in 2019, and Fawn did not owe him any back pay.

Graham was charged with two counts of forgery and one count of theft in the third degree. The jury found Graham guilty as charged. Graham appeals, challenging the sufficiency of the evidence on all three counts.

## I. Issues Presented

Regarding the forgery counts, Graham asserts there is insufficient evidence to establish he knew the checks were altered or created without permission of the account holder. Regarding the theft count, he asserts there is insufficient evidence to establish he knowingly deceived the credit union when presenting the first check.

## II. Standard of Review

Claims of insufficiency of the evidence are reviewed for correction of errors at law. *State v. Benson*, 919 N.W.2d 237, 241 (Iowa 2018). "We will uphold the verdict on a sufficiency-of-evidence claim if substantial evidence supports it." *State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020). "Evidence is substantial 'if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019)). "In reviewing challenges to the sufficiency of

evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Reed*, 875 N.W.2d 693, 704 (Iowa 2016) (quoting *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012)).

## III. Discussion

Graham challenges the sufficiency of the evidence supporting the knowledge element of each charge: with respect to the forgery charges, the requirement that he "knew the check was altered or created without the permission of the account holder"; and with respect to the theft charge the requirement that he "knowingly deceived the credit union by uttering the check."[2]

Graham bases his challenge on the fact there was no direct evidence he knew of the counterfeit nature of the checks. He claims the State's evidence of his knowledge amounts to no more than "speculation, suspicion and conjecture." *See State v. Schlitter*, 881 N.W.2d 380, 389 (Iowa 2016) (noting substantial evidence requires a fair inference of guilt and "not merely suspicion, speculation, or conjecture").

While Graham might be right that there was no direct evidence of his knowledge, there is ample circumstantial evidence. *See State v. Ernst*, ___ N.W.2d. ___, ___, 2021 WL 297250, at *5 (Iowa 2021) (recognizing direct and circumstantial evidence as equally probative). "Knowledge is seldom capable of

---

[2] Because these are the definitions the court provided in the jury marshaling instructions, and Graham did not object, they are law of the case. *See State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009) (holding when no objection to instructions is made at trial, "the jury instructions become the law of the case for purposes of our review of the record for sufficiency of the evidence").

direct proof but is usually inferred from surrounding circumstances." *State v. Boose*, 202 N.W.2d 368, 370 (Iowa 1972). The surrounding circumstances in this case provide proof of Graham's knowledge that goes beyond mere suspicion, speculation, or conjecture.

Graham presented two sequentially-numbered checks dated the same day in the same amount. A rational jury could conclude this should have raised the same suspicions of authenticity of the checks to Graham as they did to the teller, negating Graham's suggestion that he was unaware of the counterfeit nature of the checks. Additionally, Graham presented one check, was successful in cashing it, and returned to cash the identically-dated second check. A rational jury could view this sequence of events as a calculated plan by Graham to do a test run with the first check, and, having success with the test run, return to cash the second check.

Additionally, Graham's conduct during his interview with the credit union manager supports a finding Graham knew of the counterfeit nature of the checks. First, there is the issue of Graham's story about the checks. Graham told the manager the checks were for landscaping work he had done. His explanation for having the second check was that it was for back pay he was owed. However, the evidence at trial established Graham had not worked at Fawn Manufacturing for over two years, was owed no back pay, and had done no landscaping work for Fawn Manufacturing. Based on this evidence, a rational jury could conclude Graham was weaving a false story about the checks and he was doing so because he knew the checks were fraudulent. *See Ernst*, 2021 WL 297250, at *4 ("[A] false story told by a defendant to explain or deny a material fact against him is by itself

an indication of guilt and . . . is relevant to show that the defendant fabricated evidence to aid his defense." (citation omitted)).

Second, there is Graham's reaction when confronted with the information the checks were counterfeit. If, as Graham suggests, he thought the checks were legitimate, a rational jury might expect Graham to express surprise that the checks were counterfeit and insist on calling the issuer of the checks to try to determine why there was a problem with the checks and how the issuer was going to reimburse him. Graham did not do that or anything like it. Instead, Graham readily agreed to reimburse the credit union for the cash received in return for the first check. A rational jury could conclude Graham's reaction to being informed of the counterfeit nature of the checks implied he already knew the checks were not authentic. *See State v. Thomas*, 847 N.W.2d 438, 446 (Iowa 2014) (noting a defendant's reaction to events may imply guilty knowledge in assessing the sufficiency of the evidence when knowledge is at issue).

## IV. Conclusion

When viewing the record as a whole in the light most favorable to the State, we find substantial evidence for a jury to conclude Graham knew the checks were "altered or created without permission of the account holder," and Graham "knowingly deceived the credit union" by cashing the first check. Finding no reversible error, we affirm.

**AFFIRMED.**