# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-0212
Filed June 10, 2026

————————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Renard Winfield Jr.,**
Defendant–Appellant.

————————————

Appeal from the Iowa District Court for Johnson County,
The Honorable Jason D. Besler, Judge.

————————————

**AFFIRMED**

————————————

Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer,
Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and David Banta, Assistant Attorney
General, attorneys for appellee.

————————————

Considered without oral argument
by Ahlers, P.J., Langholz, J., and Telleen, S.J.
Opinion by Telleen, S.J.

1

**TELLEEN, Senior Judge.**

Renard Winfield Jr. appeals his conviction for first-degree murder, arguing the State failed to present sufficient evidence to support a finding that he was the shooter. Agreeing that sufficient evidence proved Winfield's identity, we affirm his conviction.

## BACKGROUND FACTS AND PROCEEDINGS

Winfield was shot in the leg in 2020. Winfield's former girlfriend suspected Tommy Curry had shot Winfield and reported that suspicion to the police. The responding officer testified that a neighbor reported seeing a male matching Curry's description "in the yard" at the time of the shooting. Unable to gather any further information—due in part to Winfield's lack of cooperation in the investigation—police felt they lacked enough evidence to bring charges against Curry.

The day after being shot, Winfield sent an email to a former girlfriend in which he warned "somebody gots to go n it won't be me" while discussing Curry. Winfield later sent Curry's picture to a person known as "T Blicky" and described Curry as the person who shot him. Winfield also noted that he knew Curry had a Plenty of Fish (POF) online dating account. Winfield then explained to T Blicky that he had created a fake POF account to pose as a woman named "Lena" in an effort to reach out to Curry. Investigators later confirmed that the email address associated with "Lena's" POF account was the same email address tied to the iCloud account on Winfield's iPhone. Winfield first began messaging Curry through the fake account in January 2021.

After a hiatus in text exchanges, Curry contacted the "Lena" account again in April. Over the course of several days, Curry and Winfield—who

was posing as "Lena"—arranged for a meeting time and place. On April 28, they settled on meeting at a residential building in "the quarters" in Iowa City. Curry arrived at the agreed-upon location in his vehicle, and "Lena" was not present. Curry texted "Lena" to ask when she would arrive. Moments later, a resident reported that "[r]oughly ten [to] fifteen" shots in "quick succession" sounded. That resident looked outside and saw a white SUV leaving the parking lot from where she heard the shots. The resident's mother called 911 and relayed that information to dispatch. Another witness testified that he saw a masked shooter stand next to Curry's vehicle and fire shots into the vehicle with a handgun.

Multiple shots hit Curry while he was still waiting in his vehicle. According to the medical examiner, one shot "entered the chest cavity, involved the left lung, involved the heart, including one of the coronary arteries" and "resulted in massive hemorrhage" which "likely was the mechanism of death."

Fifteen shell casings were recovered from the scene, and Curry was found by police with no pulse. Of those casings, five possessed a distinctive blue ring around the primer and were Federal-branded, nine-millimeter casings. Winfield had bought a box of blue-ringed, Federal-branded, nine-millimeter bullets from an Iowa City sporting goods store shortly before the date of the shooting. Winfield recorded himself loading a handgun with blue-ringed bullets. He also recorded himself driving a white Dodge Journey while holding a handgun, and security cameras recorded him in a white SUV the day before the shooting. Additionally, traffic and surveillance cameras recorded Winfield driving a white SUV after the shooting. Police cross-referenced the footage locations with the GPS data from Winfield's phone to create a map of his escape route following the shooting. Police used those

3

recordings to identify the SUV as a Dodge Journey registered to Winfield's mother. Data from Winfield's phone also showed that he was continuously searching for news about the shooting, including searches for "2400 block lakeside drive," "tommy curry shooting," "tommy curry was shot how many times," and multiple instances of "iowa city news shooting."

After obtaining a search warrant for Winfield's mother's home in Gary, Indiana, police recovered the box of Federal ammunition that Winfield had purchased. The twenty-round box was missing exactly five rounds—the same number of Federal, blue-ringed rounds used in the shooting. The Dodge Journey contained paperwork with Winfield's name on it. Winfield told police he had not been to Iowa City in April and had never driven the Dodge Journey to Iowa City.

The State charged Winfield with first-degree murder in May 2021. A jury convicted him as charged. Winfield was sentenced to life imprisonment with no possibility of parole. He now appeals his conviction, arguing that insufficient evidence supports the finding that he was the person who shot Curry.

## STANDARD OF REVIEW

We review challenges to the sufficiency of evidence for correction of legal error. Iowa R. App. 6.907; *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).

## DISCUSSION

The jury was instructed that to convict Winfield of first-degree murder, the State had prove the following:

1. On or about the 28th day of April 2021, [Winfield] shot Tommy Curry.

2. Tommy Curry died as a result of being shot.

3. [Winfield] acted with malice aforethought.

4. [Winfield] acted willfully, deliberately, premeditatedly and with a specific intent to kill Tommy Curry.

5. [Winfield] did not act with justification.

Winfield argues the State presented insufficient evidence identifying him as the person who shot Curry. He contends that only circumstantial evidence supports his conviction and that nobody could have identified him as the shooter since the shooter was wearing a mask. But "circumstantial and direct evidence are equally probative." *Godfrey v. State*, 962 N.W.2d 84, 102 (Iowa 2021) (cleaned up). And we are unmoved by Winfield's suggestion that he can escape any opportunity for positive identification by wearing a mask. The circumstantial evidence of his identification as the shooter was extensive and compelling. The State presented evidence that Winfield planned a catfishing scheme through the POF account to lure Curry to a specific location. Curry was murdered minutes after arriving at that agreed-upon location. GPS, surveillance, and traffic data all corroborated Winfield's departure from the scene of the murder.

Winfield argues a witness's inability to identify his Dodge Journey correctly—initially claiming it was a white Chevy Malibu—shows her account cannot be relied upon. But the witness confidently testified that the vehicle was "a bigger car. It wasn't like a sedan. And it was white." The possibility that the witness does not possess an encyclopedic knowledge of specific vehicle makes and models does not prevent a reasonable factfinder from crediting her consistent and overarching testimony that she saw a larger white vehicle fleeing the scene of the murder. Such credibility determinations

are fully within the factfinder's discretion. *See Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996).

Winfield also takes issue with individual frames of surveillance and traffic camera footage that law enforcement recovered. But the State did not unilaterally rely on any individual frame of video to prove Winfield's escape. Rather, it used a combination of multiple camera videos and GPS data to map the path of Winfield's escape. Together, this evidence is extremely compelling. Law enforcement used that confluence of data to specifically identify his mother's Indiana-registered vehicle and tie that same vehicle to the scene of the murder.

Winfield also purchased the same ammunition that was used in the murder, and his box of purchased ammunition was missing the exact number of blue-ringed, Federal-branded, nine-millimeter rounds used in the murder. He repeatedly lied to police and engaged in internet searches for changing SIM cards and transferring data out of his iPhone before he was contacted by law enforcement. And the State showed that Winfield believed Curry to be the person who had previously shot him.

Collectively, the State presented sufficient evidence for the jury to determine that Winfield was the person who shot and killed Curry. We affirm.

**AFFIRMED.**