**IN THE COURT OF APPEALS OF IOWA**

No. 21-0971
Filed August 31, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**YAHYE SALLAHADIN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi
Ackley, Judge.


        Yahye Sallahadin challenges the sufficiency of the evidence supporting his
conviction for third-degree sexual abuse.  **AFFIRMED.**


        A. Zane Blessum and Susan R. Stockdale, West Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney
General, for appellee.


        Considered by Greer, P.J., Ahlers, J., and Gamble, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2022).

**GAMBLE, Senior Judge.**

Yahye Sallahadin challenges the sufficiency of the evidence supporting his conviction for third-degree sexual abuse. We affirm.

## I. Background Facts

This case stems from the college dorm room events of December 17, 2020. Sallahadin invited another student, C.T. to his dorm room. Other students joined them, and the group consumed wine and vodka. During the evening Sallahadin tried to kiss C.T., but she rejected his advances by telling him that she had a boyfriend. C.T. left the room and went to another student's room because she did not think she could walk all the way to her room. She left the second room and went with the other student back to Sallahadin's room. She laid down on a futon and blacked out. Then a sex act occurred between Sallahadin and C.T.

C.T. made her way back to her room, called a friend, and told the friend she thought she had been raped. She then told another friend, who encouraged her to contact campus security.

Police interviewed Sallahadin. He initially denied that he had sexual contact with C.T. But over time his story began to change. Eventually he admitted they had sexual contact but claimed it was consensual and C.T. even "unbuckled his pants and everything."

The State charged Sallahadin with two counts of third-degree sexual abuse. The jury acquitted him of count I, which required the jury to find he "performed a sex act by force or against the will" of C.T. However, the jury convicted him of count II, which required the jury to find he performed a sex act on C.T. and "the

sex act was performed while [C.T.] was mentally incapacitated, physically incapacitated, or physically helpless."

Sallahadin appeals claiming his conviction is not supported by sufficient evidence.

We will discuss other facts as they relate to the issues in this opinion.

## II. Scope and Standard of Review

We review challenges to the sufficiency of the evidence for corrections of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).

> In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." "[W]e will uphold a verdict if substantial record evidence supports it." We will consider all the evidence presented, not just the inculpatory evidence. Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt. "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence."

*Id.* (alterations in original) (internal citations omitted).

## III. Discussion

"Where, as here, the jury was instructed without objection, the jury instructions become the law of the case for the purposes of reviewing the sufficiency of the evidence." *State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018) (citing *State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009) ("[Defendant] did not object to the instructions given to the jury at trial. Therefore, the jury instructions become the law of the case for purposes of our review of the record

for sufficiency of the evidence.")).  Instruction fourteen, the marshalling instruction, provided:

> The State must prove all of the following elements of the crime of sexual abuse in the third degree as alleged in count II:
> 1. On or about the 17–18 day of December, 2020, the defendant performed a sex act [on] [C.T.].
> 2. The sex act was performed while [C.T.] was mentally incapacitated, physically incapacitated, or physically helpless.

Sallahadin admits he performed a sex act on C.T.  However, he argues there was insufficient evidence that C.T. "was mentally incapacitated, physically incapacitated, or physically helpless."  Instruction seventeen defined these terms, and provided:

> Concerning element no. 2 of instruction no. 14, the following definitions apply:
> a. "Mentally Incapacitated" means that a person is temporarily incapable of controlling the person's own conduct due to the influence of a narcotic, anesthetic, or intoxicating substance.
> b. "Physically helpless" means that a person is unable to communicate an unwillingness to act because the person is unconscious, asleep, or otherwise physically limited.
> c. "Physically incapacitated" means that a person has a bodily impairment or handicap that substantially limits the person's ability to resist or flee.

C.T. testified that on the date in question she consumed alcohol, including more than ten shots of alcoholic beverage straight from the bottle, and noted instances where other people were "drop[ping] [her] chin down and pour[ing] it into [her] mouth."  Eventually she laid down and "blacked out"; she did not "remember anything after that" until she woke up—"tasting puke and having someone on top of" her.  According to C.T.'s testimony, Sallahadin was straddling her around her midsection or maybe a little higher, her shirt was up around her neck, her bra was pulled down, and Sallahadin's penis was inside her mouth.  C.T. testified that when

she turned her head away, Sallahadin grabbed her throat, forced her mouth open with his tongue, put his penis back in her mouth, and did not stop until she bit it. This testimony establishes sufficient evidence that Sallahadin perpetrated a sex act upon C.T. while she was mentally incapacitated (she "blacked out" after consuming copious amounts of alcohol). *See State v. Williams*, No. 18-2081, 2021 WL 593992, at *7 (Iowa Ct. App. Feb. 3, 2021). And she was physically helpless at the time the sex act occurred (she was not awake when Sallahadin put his penis in her mouth). *See State v. Tapia*, 751 N.W.2d 405, 407 (Iowa Ct. App. 2008). C.T.'s testimony alone is sufficient to support the verdict. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) ("We find that the alleged victim's testimony is by itself sufficient to constitute substantial evidence of [the] defendant's guilt.").

Sallahadin argues, however, we should not credit C.T.'s testimony because of inconsistencies in her recounting of events or what he perceives as "physically improbable" claims in her version of events.[1] In fact, Sallahadin argues C.T. was not incapacitated or physically helpless and that she willingly initiated a sex act. He references his police interview where he stated C.T. was aware of what was going on and assured him she wanted to engage in a sex act with him. But over the course of the interview his retelling of events shifted significantly—starting with his denial of any sexual contact to his admission of kissing C.T., to pulling her hair, and putting his hand on her neck. Eventually, when confronted with the

---

[1] We reject Sallahadin's argument as it rests upon misguided sexual stereotypes and the language of gender bias. Instead, we hold counsel and ourselves "to the highest standards of justice and fairness." *See* Mary Pat Gunderson, *Gender and the Language of Judicial Opinion Writing*, 21 Geo. J. Gender & L. 1, 34 (2019).

inconsistencies, Sallahadin admitted he engaged in oral sex with C.T. until she bit his penis "a little bit." Sallahadin also admitted C.T. was intoxicated.

Sallahadin's retelling of events in the police interview does nothing to dissuade us from our conclusion that his conviction is supported by substantial evidence. To the contrary, Sallahadin's police interview corroborated C.T.'s claim that he perpetrated a sex act upon her while she was intoxicated. And the jury was free to consider Sallahadin's shifting story during the interview as evidence of his "guilty knowledge, or in this case, as proof [Sallahadin] did not have [C.T.'s] consent as he claimed." *See State v. Lopez*, No. 10-0766, 2012 WL 163232, at *5 (Iowa Ct. App. Jan. 19, 2012). Any factual disputes were for the jury to resolve, not this court. *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006). Certainly, the jury could have rejected any inconsistent portions of C.T.'s testimony while crediting other portions. *See State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). "Evidence [she] had some level of awareness during the assaults does not preclude the jury finding [she was] incapacitated." *Williams*, 2021 WL 593992, at *7. Ultimately "it is for the jury to judge the credibility of the witnesses and weigh the evidence." *State v. Laffey*, 600 N.W.2d 57, 59 (Iowa 1999). The jury did so and found C.T.'s version of events to be credible. Therefore, we conclude Sallahadin's conviction is supported by sufficient evidence.

**AFFIRMED.**