# IN THE COURT OF APPEALS OF IOWA

No. 24-1285
Filed May 13, 2026

**State of Iowa,**
Plaintiff–Appellee,

v.

**Marqwane Smith,**
Defendant–Appellant.

Appeal from the Iowa District Court for Black Hawk County,
The Honorable Linda M. Fangman, Judge.

**AFFIRMED**

Martha J. Lucey, State Appellate Defender, and Ella M. Newell, Assistant
Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Nicholas Siefert, Assistant Attorney
General, attorneys for appellee.

Considered without oral argument
by Tabor, C.J., Langholz, J., and Mullins, S.J.
Opinion by Mullins, S.J.

1

**MULLINS, Senior Judge.**

After a late night out in Waterloo, Richard Sturdivant parked his Chevrolet Tahoe in a residential driveway, where he sat for a moment drinking tequila and listening to music. It was not long before a white pickup pulled up behind him. Three men emerged from the truck, opened the door of the idling Tahoe, and began to assault Sturdivant. The struggle ended when one of the assailants shot Sturdivant three times at close range, paralyzing him from the waist down. A home security camera recorded these events from start-to-finish.

The State charged Marqwane Smith for his involvement in the attack on Sturdivant. A jury later found him guilty of first-degree burglary under Iowa Code section 713.3 (2023) and felon-in-possession-of-a-firearm under section 724.26.[1] Smith now appeals, challenging the sufficiency of the evidence supporting those convictions. He also contends he is entitled to a new trial due to the admission of prejudicial evidence. Reviewing for correction of errors at law, we affirm.

## I.    Burglary

There is no dispute that Smith was one of the men who ambushed Richard Sturdivant through the door of his Tahoe. But Smith denies that his conduct satisfied the requirements of first-degree burglary. To prove that charge, the State had to show that Smith—or a person he aided and abetted—entered an occupied structure without right, license, or privilege to do so and while having the intent to commit a felony, assault, or theft therein.

---

[1] The State also charged Smith with murder and first-degree robbery. With respect to those charges, the jury found Smith guilty of the lesser-included offenses of assault with intent to inflict serious injury and willful injury causing serious injury. Smith does not challenge these convictions.

Iowa Code § 713.1.  On appeal, Smith contends the State failed to show that Sturdivant's Tahoe was an "occupied structure" within the meaning of section 713.1.

Our criminal code defines "occupied structure" to include "any building, structure, appurtenances to buildings and structures, land, water or air vehicle . . . occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value." *Id.* § 702.12.[2]  This definition includes two prongs: "The first describes the type of place that can be the subject of burglary, and the second considers its purpose or use." *State v. Sanford*, 814 N.W.2d 611, 616 (Iowa 2012) (quoting *State v. Pace*, 602 N.W.2d 764, 769 (Iowa 1999)).  Everybody agrees that Sturdivant's Tahoe—a land vehicle—satisfies the place requirement.  The question we must decide is whether the Tahoe meets the purpose requirement.

A qualifying purpose under section 702.12 need not be the primary purpose of an occupied structure.  *See State v. Buss*, 325 N.W.2d 384, 385 (Iowa 1982).  Our supreme court has long held that the passenger compartment of a vehicle may be an occupied structure in virtue of the "incidental storage" it provides.  *Id.*  At trial, the State sought to show that Sturdivant used his Tahoe to store personal effects.  But when asked whether he had kept valuables in the vehicle, Sturdivant could not remember.  And while Sturdivant's bank cards, identification, and cell phone were later found in the Tahoe, neither he nor the crime scene investigator could say where in

---

[2] Where no instructional error is alleged, we review sufficiency-of-the-evidence claims against the uncontested jury instructions.  *See State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022).  Here, the district court's definition of "occupied structure" was substantively identical to section 702.12, so we choose to refer to the text of the statute.

the passenger compartment these items had been located. Smith asserts it is "possible those cards were initially on Sturdivant's person."

The State responds that we need not reach the question of storage-or-safekeeping because the record shows Sturdivant occupied the vehicle for an alternative qualifying purpose: "carrying on . . . other activity." Iowa Code § 702.12. It points to Sturdivant's uncontroverted testimony that he was parked in the driveway, "listening to my music and . . . drinking my Don Julio," at the time of the assault. According to the State, "sitting in [a] car at the end of a night out" and "enjoying a sense of security and repose" is exactly the kind of activity our burglary statute is designed to protect.

We agree. While our supreme court has cautioned against construing the words "other activity" so broadly as to make every land vehicle an occupied structure, it has also made clear that using the passenger compartment of a car for shelter, privacy, or security is an activity that brings the vehicle within the ambit of the statute. *Sanford*, 814 N.W.2d at 617–18 (holding a car met the purpose prong of section 702.12 where a victim locked himself in the vehicle to avoid an assault). As the *Sanford* court observed, burglary laws are meant guard against the "inherent danger of invading [a] secured, private space." *Id*. at 618. Here, Sturdivant chose to remain inside his parked Tahoe while he finished his tequila and listened to music. A reasonable jury could infer that he did so to enjoy the privacy of the vehicle— a qualifying "other activity."

Smith urges us to reject the State's other-activity theory because it relied on a storage-or-safekeeping argument at trial. However, the jury was instructed on both alternatives, and we must uphold its general verdict if either is supported by the evidence. Iowa Code § 814.28. Smith also contends that drinking alcohol in an idling vehicle is unlawful, and so

4

Sturdivant's conduct cannot qualify as an "other activity" under section 702.12. But Smith offers no authority to suggest proof of a victim's wrongdoing is a viable defense to burglary. If our legislature had intended to so limit the meaning of an "occupied structure," it could have said as much. *See Buss*, 325 N.W.2d at 385 ("The burglary statute does not contain the qualifying language suggested by the defendant, and we decline to add it.").

We find substantial evidence that the Tahoe was an occupied structure. *See Sanford*, 814 N.W.2d at 615 (reciting the familiar standards for sufficiency-of-the-evidence review). Because Smith does not challenge the State's evidence on any other element, we affirm his first-degree burglary conviction.

## II. Felon in Possession

Smith also challenges the sufficiency of the evidence supporting his conviction under Iowa Code section 724.26, which prohibits persons with felony convictions from possessing, receiving, and transporting firearms. The statute provides:

> A person who is convicted of a felony in a state or federal court, or who is adjudicated delinquent on the basis of conduct that would constitute a felony if committed by an adult, and who knowingly has under the person's dominion and control or possession, receives, or transports or causes to be transported a firearm or offensive weapon is guilty of a class "D" felony.

Iowa Code § 724.26(1) (2023).

Smith stipulated that he was a felon at the time of the assault, but he denied possessing a firearm. Both sides agree that it was Smith's cousin, Dajoniss Morman-Jenkins, who shot Sturdivant. And the State presented no evidence to suggest Smith had control over Morman-Jenkins's weapon

before, during, or after the assault.[3]  Instead, it urged the jury to find Smith guilty for *transporting* a firearm based on the fact that he drove Morman-Jenkins to and from the scene while knowing Morman-Jenkins was armed.[4]

On appeal, Smith contends he cannot be guilty of transporting a weapon he never possessed.  He quotes our unpublished opinion in *State v. Thompson*, No. 12–2314, 2013 WL 6686624, at *3 (Iowa Ct. App. Dec. 18, 2013), where we reasoned a defendant "cannot be convicted of carrying or transporting a weapon without foundational proof he actually or constructively possessed the gun."  The district court's marshalling instruction on Smith's felon-in-possession charge permitted the jury to convict Smith if it found he "knowingly transported or caused to be transported . . . a firearm."[5]  However, the instructions did not elaborate the meaning of the word "transport," so we must look elsewhere to determine

---

[3] As we discuss below, the State did introduce a social media video suggesting Smith was in possession of a handgun in October 2023.  However, the amended trial information charged Smith only for his conduct on the date of the shooting two months later.  The State does not contend the jury could convict Smith based on the gun in the social media video.

[4] The State alternatively argued that Smith was guilty of aiding and abetting Morman-Jenkins's transport of the firearm.  On appeal, Smith contends that theory fails for lack of any evidence that Morman-Jenkins was a felon.  Because we find sufficient evidence to support Smith's conviction as a principal, we need not address his challenge to the State's aiding-and-abetting theory.  *See* Iowa Code § 814.28.

[5] Smith did not object to the marshalling instruction, nor did he assert his argument under *Thompson* at trial.  We question whether his challenge is actually an unpreserved claim of instructional error.  *See State v. Mead*, No. 24-1312, 2026 WL 42600, at *4 (Iowa Ct. App. Jan. 7, 2026) (discussing but declining to resolve whether a sufficiency claim based on a purely legal argument is exempt from error preservation requirements).  But because the State does contest preservation, we proceed to the merits without reaching that issue.

whether that word bears the meaning Smith claims. *See State v. Crawford*, 974 N.W.2d 510, 521 (Iowa 2022).

In *Thompson*, a panel of our court construed the words "carry" and "transport" in the context of a former statute prohibiting handguns in vehicles. *See* Iowa Code § 724.4 (2011) (stating a person "who knowingly carries or transports in a vehicle a pistol or revolver" commits an aggravated misdemeanor), *superseded by* 2021 Iowa Acts ch. 35, § 9. Interpreting these terms synonymously, we found they described moving a handgun "from one place to another" and that such physical movement "presupposes possession." *Thompson*, 2013 WL 6686624, at *3 (citation omitted). We therefore held that a conviction under section 724.4 could not stand absent proof that a defendant had "some proprietary interest or immediate right to exercise control" over a handgun found in the vehicle he occupied. *Id.* at *3, 4.

When similar statutes use similar words, we strive to apply a similar meaning. *Tiano v. Palmer*, 621 N.W.2d 420, 423 (Iowa 2001). Yet, we must avoid forcing old interpretations into new contexts when doing so would violate legislative intent. *See State v. Rhodes*, 6 N.W.3d 741, 751 (Iowa 2024) (noting all interpretive canons must be applied "with careful regard to context"). That is the case here. Unlike the statute at issue in *Thompson*, section 724.26 separately prohibits both "possession" and "transport" of firearms. To find that one of these prohibited acts presupposes the other would render part of the statute surplusage. We generally "do not presume the legislature intended words in a statute be given a redundant meaning." *State v. Sullins*, 509 N.W.2d 483, 485 (Iowa 1993). The better conclusion is that it meant for the statute to criminalize at least some instances of firearm transport that do not involve possession.

Other courts interpreting similar statutes have recognized the same distinction. For example, in finding an Oklahoma conviction for transporting a loaded firearm was not equivalent to "possessing . . . a firearm," the Fifth Circuit reasoned that "[t]he term 'transport' does not necessarily imply possession." *Flores-Abarca v. Barr*, 937 F.3d 473, 483 (5th Cir. 2019); *see also* Okla. Stat. tit. 21 § 1289.13 (2004). The court illustrated the difference with a hypothetical nearly identical to this case. *See Flores-Abarca*, 937 F.3d at 483 (explaining "the driver of a vehicle can transport passengers and their possessions without having the 'power and intent to exercise control over' every object in the vehicle" (citation omitted)). It concluded that under Oklahoma law, "transport and possession are overlapping but distinct offenses, each of which may include some conduct not included in the other." *Id*. at 484 n.6.

Similarly, in *State v. Torres*, 413 P.3d 467, 480 (N.M. 2018), the Supreme Court of New Mexico upheld a defendant's conviction for transporting a firearm despite his argument that there was insufficient evidence he received or possessed the gun. Like Iowa Code section 724.26, the New Mexico felon-in-possession statute made it unlawful for a felon "to receive, transport or possess any firearm." N.M. Stat. Ann. § 30-7-16(A) (2001). Emphasizing that transportation was an independent basis for conviction, the court found the defendant's admissions that "he was driving [a passenger] around town and was aware that [the passenger] had brought a gun into the car" were enough to support the verdict. *Torres*, 413 P.3d at 481.

Like these courts, we find the plain language of Iowa Code section 724.26 prohibits a felon from "knowingly . . . transport[ing]" a firearm regardless of whether that firearm is in the felon's actual or

8

constructive possession. It follows that the statute is violated when a felon transports a passenger who the felon knows to be armed.

With that issue resolved, we find sufficient evidence to support Smith's conviction in this case. There is no dispute that Smith was the driver of the white truck that carried Morman-Jenkins to and from the crime scene. And while Smith denied knowing his cousin was armed as they fled the shooting, a reasonable jury could infer the contrary. Smith testified that he saw Morman-Jenkins shoot Sturdivant. And the shooting occurred shortly before the cousins departed in Smith's truck. The weapon was not found at the scene. Viewed in the light most favorable to the State, substantial evidence supports the jury's finding that Smith transported a firearm as felon. We thus affirm his conviction under section 724.26.

### III. Prejudicial Evidence

Finally, Smith contends the district court abused its discretion by admitting a social media video over his objection to unfair prejudice. The video, which was posted to Smith's Snapchat account in October 2023, depicts a hand (allegedly Smith's) arranging stacks of cash atop a desk and inside an open safe. A caption reads in part, "One thing I never been was broke." During parts of the twenty-nine second video, a pistol grip with a trigger lock is visible inside the safe.[6] It is not clear whether the grip is attached to an assembled firearm. Police would later identify the safe during a search of the home where Smith lived. They found no gun inside.

---

[6] Also visible in the safe and on the desk are glass jars containing a green, budlike material that neither party mentions in their briefing. Smith makes no prejudice argument on that basis, so we decline to speculate further.

Smith filed a motion in limine seeking to exclude the Snapchat video on prejudice grounds, and the district court granted his request. But after Smith took the stand, the State asked the court to reconsider, arguing the video showed he "would have had access to a firearm contrary to much of his testimony." The court permitted the State to introduce the video through a pair of rebuttal witnesses. Notably, a police officer who laid foundation for the exhibit could not say whether the grip in the safe was part of a handgun "that would fire bullets." Smith now contends the Snapchat video was both irrelevant and "highly prejudicial" because "no one definitively identified this object as a firearm."

The district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Iowa R. Evid. 5.403. Evidence is unfairly prejudicial when it prompts the jury to make a decision for an improper reason, such as sympathy, horror, or retribution. *State v. Webster*, 865 N.W.2d 223, 242–43 (Iowa 2015). Because weighing probable prejudice against probative value "is not an exact science, we give a great deal of leeway" to the district court when reviewing rulings on rule 5.403 objections. *State v. Newell*, 710 N.W.2d 6, 20–21 (Iowa 2006).

Here, we agree with Smith that the Snapchat video was of limited probative value. Smith did not deny that he had "access" to a firearm during his testimony at trial—only that he was not armed with one on the date of the shooting. And although the marshalling instruction on Smith's section-724.26 charge allowed for conviction on both possession and transportation grounds, the State only pressed a transportation theory in its closing argument.

Nevertheless, we cannot find that the video's probative value was substantially outweighed by a risk of unfair prejudice because any risk of

prejudice was also marginal.  We discern nothing inflammatory about the image of a handgun secured by a trigger lock inside a safe.  *See State v. Brown*, 569 N.W.2d 113, 117 (Iowa 1997) (finding "little likelihood" that testimony about a defendant's prior gun use would provoke a jury's sympathy or sense of horror).  And with the benefit of hindsight, we can infer the jury was not so roused as to convict Smith on an improper basis.  After all, it acquitted him on the State's two most serious charges.  *See State v. Taylor*, 689 N.W.2d 116, 130 (Iowa 2004) (noting acquittal on a more serious charge is one indication that evidence was not unfairly prejudicial); *State v. Rodriquez*, 636 N.W.2d 234, 243 n.4 (Iowa 2001) (same).

The district court did not abuse its broad discretion in admitting the Snapchat video over Smith's objection.

**AFFIRMED.**